**No. 26-1706**

## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIRST CIRCUIT

DORCAS INTERNATIONAL INSTITUTE
OF RHODE ISLAND, et al.,

Plaintiffs-Appellees,

v.

MARKWAYNE MULLIN, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Rhode Island
District Court Case No. 1:26-cv-00132-JJM-PAS

## EMERGENCY MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY
## AND A STAY PENDING APPEAL

AUGUST FLENTJE
Senior Counsel

MARIE V. ROBINSON
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

TYLER J. BECKER
Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

STATEMENT .......................................................................................................... 3

ARGUMENT .......................................................................................................... 6

    I.    The Government Is Likely to Succeed on the Merits................................. 6

        A.    The Comprehensive Re-Review Policy Is Neither
                Reviewable Nor Contrary to Law........................................................ 6

        B.    The Country-Specific Factors Policy Is Neither Reviewable
                Nor Contrary to Law............................................................................. 9

        C.    The Benefits-Hold Policy Is Neither Reviewable Nor
                Contrary to Law ...................................................................................17

        D.    The Challenged Policies Are Not Arbitrary or Capricious........... 22

    II.    The Equitable Factors Favor a Stay............................................................ 26

CONCLUSION ......................................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs v. Gardner,*
  387 U.S. 136 (1967) ............................................................................................. 7

*AFGE Local 2305 v. Dep't of Veterans, Affs.,*
  177 F.4th 1 (1st Cir. 2026) ................................................................................ 14

*Atieh v. Riordan,*
  797 F.3d 135 (1st Cir. 2015) ............................................................................. 24

*Bennett v. Spear,*
  520 U.S. 154 (1997) ......................................................................................... 6, 7

*Biden v. Texas,*
  597 U.S. 785 (2022) ............................................................................................. 7

*City of Fall River v. FERC,*
  507 F.3d 1 (1st Cir. 2007) ................................................................................... 7

*Doe v. Trump,*
  2026 WL 1170971 (D. Mass. Apr. 30, 2026) ................................................... 16

*FDA v. Wages & White Lion Invs., L.L.C.,*
  604 U.S. 542 (2025) ........................................................................................... 24

*FTC v. Standard Oil of Calif.,*
  449 U.S. 232 (1980) ............................................................................................. 8

*Gupta v. Jaddou,*
  118 F.4th 475 (1st Cir. 2024) ............................................................................ 18

*Harper v. Werfel,*
  118 F.4th 100 (1st Cir. 2024) .............................................................................. 6

*Heckler v. Chaney,*
  470 U.S. 821 (1985) ........................................................................................... 10

*INS v. Cardoza-Fonseca,*
  480 U.S. 421 (1987) ..................................................................................... 10, 13

*INS v. Legalization Assistance Project,*
    510 U.S. 1301 (1993) .................................................................... 28

*Ivy Sports Med., LLC v. Burwell,*
    767 F.3d 81 (D.C. Cir. 2014) ......................................................... 8

*Jama v. DHS,*
    760 F.3d 490 (6th Cir. 2014) ....................................................... 13

*Kale v. Alfonso-Royals,*
    139 F.4th 329 (4th Cir. 2025) ...................................................... 18

*Kiobel v. Royal Dutch Petroleum,*
    569 U.S. 108 (2013) .................................................................... 28

*Kucana v. Holder,*
    558 U.S. 233 (2010) ............................................................... 10, 17

*Margolin v. NAIJ,*
    146 S. Ct. 1285 (2026) ................................................................ 14

*McNary v. Haitian Refugee Ctr., Inc.,*
    498 U.S. 479 (1991) .................................................................... 11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ...................................................................... 23

*Mullin v. Doe,*
    609 U.S. __, 2026 WL 1825840 (2026) ................................11, 12, 17

*Nat'l TPS All. v. Noem,*
    150 F.4th 1000 (9th Cir. 2025) ...................................................... 8

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................. 6, 29

*Patel v. Garland,*
    596 U.S. 328 (2022) .................................................................... 12

*Rajah v. Mukasey,*
    544 F.3d 427 (2d Cir. 2008) ........................................................ 16

*River St. Donuts LLC v. Napolitano,*
    558 F.3d 111 (1st Cir. 2009) ........................................................ 25

*Russello v. United States*,
464 U.S. 16 (1983) ................................................................................................ 15

*Texas v. United States*,
523 U.S. 296 (1998) .......................................................................................... 7, 8

*Trump v. Hawaii*,
585 U.S. 667 (2018) .................................................................................15, 24, 25

*Trump v. New York*,
592 U.S. 131 (2020) ............................................................................................ 13

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) ...................................................................................... 14, 15

## **Statutes**

5 U.S.C. §701(a)(2) .......................................................................................10, 13

5 U.S.C. §706 ........................................................................................................ 5

6 U.S.C. §271(b) .................................................................................................. 20

6 U.S.C. §111(b)(1)(A) .................................................................................. 20, 21

8 U.S.C. §1101(a)(42)(A) .................................................................................... 13

8 U.S.C. §1103(a)(1) ........................................................................................... 20

8 U.S.C. §1152(a)(1)(A) ............................................................................14, 15, 16

8 U.S.C. §1158(a) .......................................................................................... 10, 13

8 U.S.C. §1158(d)(5)(A)(iii) ............................................................................... 19

8 U.S.C. §1158(d)(7) ........................................................................................... 19

8 U.S.C. §1160(e)(1) ........................................................................................... 11

8 U.S.C. §1160(e)(3)(A) ...................................................................................... 11

8 U.S.C. §1182(a)(2) ........................................................................................... 21

8 U.S.C. §1182(a)(3) ........................................................................................... 21

8 U.S.C. §1182(a)(3)(B) ........................................................................................ 21

8 U.S.C. §1182(a)(3)(C) ........................................................................................ 21

8 U.S.C. §1182(f) ............................................................................................... 3, 16

8 U.S.C. §1252(a)(2)(B) ..........................................................2, 10, 11, 13, 17, 18

8 U.S.C. §1252(a)(2)(B)(i) ........................................................................10, 11, 12

8 U.S.C. §1252(a)(2)(B)(ii) ........................................................... 10, 12, 17, 18

8 U.S.C. §1254a(b)(5)(A) .................................................................................11, 12

8 U.S.C. §1255 ...............................................................................................12, 15, 17

8 U.S.C. §1255(a) ............................................................................................. 15, 18

8 U.S.C. §1324a .................................................................................................... 15

8 U.S.C. §1324a(h)(3) ......................................................................................... 15

8 U.S.C. §1571(b) ................................................................................................. 20

## Rules

FRCP 54(b) ............................................................................................................. 5

## Regulations

8 C.F.R. §245.2 .................................................................................................... 15

8 C.F.R. §274a.12 ................................................................................................ 15

## Other Authorities

Executive Order 14161, 90 Fed. Reg. 8451 (Jan. 20, 2025). ............................................ 3

Presidential Proclamation 10949, 90 Fed. Reg. 24497 (June 10, 2025) .......................... 4

Presidential Proclamation 10998, 90 Fed. Reg. 59717 (Dec. 19, 2025) .......................... 4

v

**INTRODUCTION**

The Immigration and Nationality Act ("INA") confers substantial discretion on the Government to adjudicate immigration benefits and to scrutinize applicants and evaluate anti-terrorism, public safety, and other national security concerns. Yet the district court below vacated three policy statements of U.S. Citizenship and Immigration Services ("USCIS") that serve those critical national security interests. These policy statements ensure that immigration benefits including adjustment of status, work authorization, asylum, withholding of removal, and naturalization are provided only to aliens who qualify for the benefits and do not present a national-security risk.

Specifically, the policy statements instituted a comprehensive re-review of immigration benefits provided since January 2021 that were provided to aliens from thirty-nine countries that have governance structures that cannot be relied upon to share criminal history and terror watch data and for which USCIS currently lacks adequate tools to verify alien documents due to widespread document fraud. The policy statements also paused final adjudication of immigration benefit applications from those same countries and required the consideration of the significant vetting issues in adjudication of such applications for aliens from nineteen of the most high-risk countries.

A stay is plainly warranted. The district court's rulings on both threshold and merits issues are palpably flawed, and the Government is thus likely to succeed on the

merits of this appeal.  The district court lacked jurisdiction to review the challenged policies in light of the limits on judicial review under various provisions of the INA and the Administrative Procedure Act ("APA"), and particularly the jurisdiction-stripping provisions of 8 U.S.C. §1252(a)(2)(B).

The Government is also likely to prevail on the merits because the INA confers broad discretion on the Secretary and USCIS in the adjudication, review, and reconsideration of immigration benefits and because the challenged policies fall comfortably within that authority.  The district court's opinion hamstrings that discretion on the basis that the INA does not allow USCIS to adopt country-specific adjudication policies or pause benefits adjudication decisions at all.  Nothing in the INA does either.  And the consequences of the district court's reasoning are staggering.  Its statutory reasoning is as absolutist as it is untenable:  Even a temporary pause of just a few days from issuance of adjudication decisions for immigration benefits for Saudi nationals after the September 11, 2001 terrorist attacks, for example, would be categorically unlawful.  And the court's arbitrary-and-capricious reasoning fares no better.

Absent a stay, USCIS must continue to abandon policies that it adopted to address vetting deficiencies identified by the President, resume final adjudications before enhanced vetting procedures currently under development can be implemented, and make discretionary immigration-benefit decisions notwithstanding the agency's determination that additional review is necessary to adequately address significant

2

national-security and public-safety concerns identified by the President. The balance of equities and public interest thus strongly favor a stay pending appeal.

Despite the immediate harms the Government is suffering, the district court denied expedited consideration of the Government's stay motion, and waited nearly a month to decide that motion, despite this Court's rule that the Government must wait for a district court ruling prior to seeking a stay in this Court. *See* Order, *AFGE Local 2305 v. U.S. Dep't of Veterans Affs.*, No. 26-1321 (1st Cir. Apr. 6, 2026). This Court should thus also grant an immediate administrative stay to prevent further irreparable harm in the interim.

## STATEMENT

On January 20, 2025, the President issued Executive Order 14161, which directed the Secretary of State to enhance vetting and screening of all aliens who intend to be admitted, enter, or are already inside the United States, particularly those aliens coming from regions or nations with identified security risks. 90 Fed. Reg. 8451 (Jan. 20, 2025). The order required officials including the Secretary of Homeland Security to within sixty days submit an inter-agency report "identifying countries throughout the world for which vetting and screening information is so deficient as to warrant a partial or full suspension on the admission of nationals from those countries pursuant to section 212(f) of the INA (8 U.S.C. 1182(f))." *Id.* That inter-agency review identified a range of significant deficiencies in existing vetting, none of which Plaintiffs contest.

3

On June 4, 2025, after receiving that review, the President issued Presidential Proclamation 10949, which implemented a new Travel Ban and restricted the entry into the United States of individuals from nineteen countries that the Secretary of State had identified as "deficient with regards to screening and vetting." 90 Fed. Reg. 24497. On December 16, 2025, the President issued Presidential Proclamation 10998, which expanded the list of countries to thirty-nine.

Following well-publicized acts of violence by aliens in the United States on June 14, 2025, and November 26, 2025, and borrowing from the preceding inter-agency review, USCIS issued three policy statements between November 27, 2025, and January 1, 2026. (hereinafter, "the Challenged Policies"). These Challenged Policies are the Comprehensive Re-Review Policy, the Country-Specific Factors Policy, and the Benefits Hold Policy.[1] Taken together, the Challenged Policies: (a) describe how the USCIS will interpret its existing authority to conduct adjudications and, consistent with the INA's command to focus on national security and public safety, to consider certain country-specific facts and circumstances when making discretionary determinations for immigration benefit requests filed by applicants from those 19 countries; (b) temporarily pause final decisions on all pending immigration-benefits applications for individuals from 39 countries, while the processing of all such applications

---

[1] The Government does not seek a stay of the district court's rulings with respect to the Global Asylum Hold Policy, which has not been in operation since well before the district court's decision. *Contra* Op.91 n.32.

continues; and (c) preview a reconsideration of all immigration benefits awarded to aliens from those 39 countries since January 2021.

Plaintiffs—various immigration and labor organizations—filed this action in the district court. Plaintiffs sought to vacate USCIS's policy statements under 5 U.S.C. §706, enjoin the government from enforcing those policies, and to declare them unlawful under the Administrative Procedure Act ("APA") and the Constitution.

On June 5, 2026, the district court granted in part Plaintiffs' motion for summary judgment. *See* Opinion ("Op."), ECF 28, at 1-138. The court concluded that it had jurisdiction to review all the Challenged Policies under the APA, and the INA's judicial review bars did not apply. *See id.* at 21-85. On the merits, the district court ruled that the Challenged Policies were contrary to law and arbitrary and capricious under the APA. *See id.* at 85-127.

On June 11, 2026, the district court granted the Government's motion for final judgment under FRCP 54(b). ECF 36. On June 19, 2026, the Government filed a motion to stay the court's decision pending appeal. ECF 46. Defendants requested expedited consideration of that motion, but the district court denied that request and provided Plaintiffs until July 6 to respond, and scheduled an in-person hearing for July 8. The district court later cancelled that hearing, stating that it would be "rescheduled." Only after the Government notified the district court that if it had not issued a decision by July 15, the Government would treat the motion as constructively denied, did the

district court reschedule the hearing for July 15.  Later that day, and nearly a month after the Government requested a stay, the district court denied the request.  ECF 51.

## ARGUMENT

A stay pending appeal is warranted.  The government is likely to succeed on the merits of its appeal, the government will face irreparable injury absent a stay, and the balance of equities and public interest support a stay.  *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I.    The Government Is Likely to Succeed on the Merits

### A. The Comprehensive Re-Review Policy Is Neither Reviewable Nor Contrary to Law

#### 1.  *The Comprehensive Re-Review Policy is not reviewable under the APA or otherwise*

The Comprehensive Re-Review Policy is decidedly not final agency action under the APA because it does not satisfy either prong of the test established in *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  *First*, the policy does not mark the "consummation of the agency's decisionmaking process." *Id.*  Rather, it is an internal procedural directive directing agency personnel how to prioritize reviewing various immigration benefits that have been granted since 2021.  The policy is therefore "interlocutory" in nature, and is at most a "preliminary investigative step" that does not constitute final agency action under this Court's precedent.  *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024).  *Second*, the Comprehensive Re-Review Policy is not agency action from "which rights or obligations have been determined, or from which legal consequences will flow."

*Bennett*, 520 U.S. at 178 (quotations omitted).  Any legal consequences would come from USCIS's subsequent decision to reverse the immigration benefit provided—assuming that occurs at all.

The district court barely addressed final agency action with respect to this policy. The court reasoned that because the memoranda at issue direct USCIS staff to "[c]onduct a comprehensive re-review of approved benefit requests for aliens from countries listed in [the Travel Ban] who entered the United States on or after January 20, 2021," the action is final.  Op.56.  The district court relied on *Biden v. Texas*, 597 U.S. 785, 808-09 (2022), to conclude the policy is final agency action, Op.55, but that case involved DHS memoranda that represented the consummation of the agency's decision-making process and immediately bound DHS officials by terminating the Migrant Protection Protocols program, thereby producing legal consequences, *id.* at 804-06, which is not the case here.

The Comprehensive Re-Review Policy is not ripe for review either.  "In determining whether a case is ripe for review, [courts] must examine 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *City of Fall River v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967)).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted). Here, Plaintiffs do not identify any particular benefit that has been revoked as a

consequence of the Comprehensive Re-Review Policy, or that such revocation is certain to occur. The policy simply "ha[s] no legal force or practical effect" until such revocation occurs. *FTC v. Standard Oil of Calif.*, 449 U.S. 232, 243 (1980). The district court thought both prongs of the ripeness test were satisfied, but failed to consider the first prong at all with respect to the Comprehensive Re-Review Policy. Op.62-64. The court briefly noted that one of the organizational Plaintiffs asserted harm from having to re-open closed files and devote time to clients who already received their benefits, Op.65, but that harm would only occur *if* benefits were revoked—precisely the sort of "contingent future events that may not occur as anticipated, or may not occur at all" that precludes ripeness. *Texas*, 523 U.S. at 300.

### 2. Even if the Comprehensive Re-Review Policy is reviewable, the policy is not contrary to law

As the district court acknowledged, both the D.C. Circuit and the Ninth Circuit have recognized agencies' inherent power to reconsider past decisions. Op.102-03 (citing *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014); *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1019 (9th Cir. 2025)). Yet the district court still concluded the Comprehensive Re-Review Policy was contrary to law because the D.C. and Ninth Circuit decisions include an exception that precludes re-review where "Congress has spoken" about the procedures for reconsidering past decisions. Op.103 (internal quotations omitted). The district court concluded that in the INA, Congress has permitted revocation or termination of immigration benefits only "on an individualized

8

level and determine whether a particular person—not a large swath of people—lack eligibility for a benefit provided." Op.105.

But nothing in the Comprehensive Re-Review policy indicates that USCIS will not undertake an individualized assessment. It does not follow that simply because an administrative agency makes an assessment, based on background information about fraud, national security concerns, and a potential lack of reliable information, that certain applications are more likely to necessitate re-review, that review of those applications will not be individualized. Nor does the Comprehensive Re-Review policy bar individualized review. *Contra* Op.31-39. To the contrary, the December Memorandum required that "all aliens meeting these criteria undergo a thorough re-review process, including a potential interview and, if necessary, a re-interview, to fully assess all national security and public safety threats along with any other related grounds of inadmissibility or ineligibility." *See* Op.14 n. 10 (quoting ECF 16-2, at 1). That plainly envisions an individualized assessment of applications.

The district court's theory that individualized review will not occur is simply wrong, and therefore the Government is likely to succeed in demonstrating it is not contrary to law.

### B. The Country-Specific Factors Policy Is Neither Reviewable Nor Contrary to Law

1. The identification of country specific factors relevant to discretionary determinations is inextricably intertwined with the agency's exercise of discretion over

9

immigration benefits and therefore is not reviewable. The district court erred in holding otherwise.

The APA expressly precludes review of actions "committed to agency discretion by law." 5 U.S.C. §701(a)(2); *see Heckler v. Chaney*, 470 U.S. 821, 830 (1985). And, as relevant here, Congress expressed a clear intent to preclude judicial review of USCIS's discretionary decisions. The broad language of 8 U.S.C. §1252(a)(2)(B) expressly strips judicial review of the agency's discretionary denial of adjustment of status, *see id.* §(i), and over "any other decision or action" by the government where Congress "under this subchapter" delegated "discretion" to the Attorney General or Secretary of Homeland Security, *see id.* (ii). So too did Congress preclude review of the discretionary analysis and adjudication of applications regardless of the asylee's country of origin. *See* 8 U.S.C. §1158(a); *Cardoza-Fonseca*, 480 U.S. at 443.[2] Thus, Congress expressly granted discretion to the Secretary of Homeland Security in deciding when to grant certain immigration benefits. The Country-Specific Factors Policy's clarification to adjudicators of pertinent factors falls well within that discretion, and the Court lacked jurisdiction to review it. Plaintiffs cannot invoke the APA to circumvent those jurisdictional limits, and the district court erred in concluding otherwise.

---

[2] The Supreme Court has recognized that the decision to grant or deny an asylum application does not fall under §1252(a)(2)(B)(ii)'s jurisdictional bar. *Kucana v. Holder*, 558 U.S. 233, 247 n.13 (2010). However, as discussed *infra*, p.13, asylum applications are discretionary under other statutory provisions, and thus not subject to judicial review. *Contra* Op. 88-111.

The district court and Plaintiffs relied primarily on *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991), to argue that 8 U.S.C. §1252(a)(2)(B) does not preclude review here.  Op.31-39; Stay Op.8-10.  Not so.

*McNary* involved a program regarding adjustment of status for Special Agricultural Workers, and a statutory provision that prohibits judicial review "of a determination respecting an application for adjustment of status under this section," and further prohibits judicial review "of such a denial."  8 U.S.C. §1160(e)(1), (3)(A).  As the Supreme Court described *McNary* recently, "[b]ecause this provision referred to 'a single act,' i.e., a ruling on an individual application, the Court held that alien farmworkers' broad claims about the procedures used in implementing the program could proceed."  *Mullin v. Doe*, 609 U.S. __, 2026 WL 1825840, at *8 (2026).  In *Doe*, the Supreme Court concluded that a different statutory provision barred judicial review of "all th[e] steps were part of the process that led to her final decision to terminate these countries' TPS designation."  *Id.*  The relevant statute provides: "There is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection."  8 U.S.C. §1254a(b)(5)(A).

Here, the judicial review bars are more like those in *Doe* than *McNary*.  With respect to adjustment of status, judicial review is precluded for "any judgment regarding the granting of" adjustment of status.  8 U.S.C. §1252(a)(2)(B)(i).  The statute further excludes from judicial review "any other decision or action … the authority for which

is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security," except for "the granting" of asylum claims. *Id.* §1252(a)(2)(B)(ii). These judicial review bars are not limited to a single act. Instead, they preclude review of "any judgment regarding" adjustment of status and "any other decision or action" within the discretion of the Attorney General or Homeland Security Secretary. Indeed, the *Doe* Court noted that even if "determination" in §1254a(b)(5)(A) "referred only to that final decision," review would still be precluded because "all the preceding decisions would be 'with respect to' that decision." 2026 WL 1825840, at *8. "[R]egarding" in §1252(a)(2)(B)(i) is a synonym of "with respect to."

That conclusion is reinforced by *Patel v. Garland*, where the Supreme Court determined that §1252(a)(2)(B)(i) precluded judicial review of factual determinations underpinning the denial of an adjustment of status application during removal proceedings. 596 U.S. 328, 331, 334-36 (2022). The Supreme Court focused its analysis on the meaning of "any judgment" in §1252(a)(2)(B)(i), and explained that "any" has an "expansive meaning" and "regarding" has a "broadening effect," meaning that "any judgment" not only includes the final, last in time grant of relief but also "*any* judgment *regarding* the granting of relief." *Id.* at 338-39 (emphasis in original). Thus, the Supreme Court concluded that 8 U.S.C. §1252(a)(2)(B)(i) "prohibits review of any judgment *relating to* the granting of relief" under §1255 and the other enumerated provisions. *See id.* at 339 (emphasis in original).

12

Similarly, with respect to Plaintiffs' asylum claims, Congress has left the timing and manner of adjudication to the agency's discretion. While the granting of asylum applications is specifically exempt from the jurisdictional bars at 8 U.S.C. §1252(a)(2)(B), those applications are also discretionary. *See* 8 U.S.C. §1158(a) (the Attorney General may grant asylum, as a matter of discretion, to an otherwise deportable alien who meets the definition of a refugee under §1101(a)(42)(A)); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 443 (1987) ("[A]n alien who satisfies the applicable standard under [§1158(a)] does not have a *right* to remain in the United States; he or she is simply *eligible* for asylum if the Attorney General, in his discretion, chooses to grant it.") (emphasis in original). The APA thus does not provide for review. *See* 5 U.S.C. §701(a)(2).

Furthermore, the Country-Specific Factors Policy is not final agency action. The policy memoranda do not reflect the consummation of any agency action in any individual case. *See Trump*, 592 U.S. at 131 ("Any prediction how the Executive Branch might eventually implement this general statement of policy is no more than conjecture at this time.") (cleaned up); *Jama v. DHS*, 760 F.3d 490, 496 (6th Cir. 2014). Rather, the Country-Specific Factors Policy is operational guidance that provides adjudicators guidelines into whether particular applications are subject to additional review given the national-security and public-safety concerns identified by the President.

13

2. The district court also concluded that with respect to the processing of adjustment of status and employment authorization applications, the Country-Specific Factors Policy was contrary to law. Op.112. That was error.

Specifically, the court determined that the policy discriminated against applicants from those countries in violation of 8 U.S.C. §1152(a)(1)(A), which bars "discriminat[ion] … in the issuance of an immigrant visa because if the person's … nationality." *See* Op.88-90, 108-12. Plaintiffs *never* asserted such an argument in their summary-judgment briefing, and thus the district court erred in relying on it under party-presentation principles. *See, e.g., Margolin v. NAIJ*, 146 S. Ct. 1285, 1288 (2026); *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020). In denying a stay, the district court concluded that it was sufficient that Plaintiffs cited 8 U.S.C. §1152(a)(1)(A) "briefly" in their complaint, even though they failed to raise it in their summary-judgment briefing at all. Stay Op.12-13 (citing ECF 1, at 11-12). Yet as this Court has stated time and again, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *AFGE Local 2305 v. Dep't of Veterans Affs.*, 177 F.4th 1, 12 (1st Cir. 2026) (internal quotations omitted). Plaintiffs thus waived reliance on 8 U.S.C. §1152(a)(1)(A) at summary judgment. Yet the district court concluded that the Country-Specific Factors Policy was contrary to law based only on 8 U.S.C. §1152(a)(1)(A).

In denying a stay, the district court also noted that the party-presentation principle is "supple, not iron-clad." Stay Op.13 (quoting *Sineneng-Smith*, 590 U.S. at

14

376). Yet the Supreme Court referred to "modest" interventions such as correcting a statute-of-limitations miscalculation or ordering supplemental briefing on jurisdictional issues the Court must consider anyways. *Sineneng-Smith*, 590 U.S. at 376 & n.4. Adjudicating an entire legal theory never raised by the Defendants at summary judgment is not such an appropriate intervention.

One of the principal reasons for the party-presentation principle is that courts have a pronounced tendency to commit error when they are both crafting legal arguments and then deciding (their own) contentions without benefit of adversarial testing. That danger is on full display here. "Section 1152(a)(1)(A) is expressly limited to the issuance of 'immigrant visa[s].'" *Trump v. Hawaii*, 585 U.S. 667, 694 (2018) (quoting 8 U.S.C. §1152(a)(1)(A)). Neither work authorization nor adjustment of status are the issuance of an immigrant *visa*. Adjustment of status is governed by a different statutory provision, 8 U.S.C. §1255, and employment authorization is authorized under 8 U.S.C. §1324a and implementing regulations, not the immigrant visa issuance process. *See* 8 U.S.C. §§1152(a)(1)(A), 1255(a), 1324a(h)(3); 8 C.F.R. §§245.2, 274a.12. Congress' choice to include a specific prohibition in the visa process but not in other processes in the same statute must be respected. *See Russello v. United States*, 464 U.S. 16, 23 (1983). The district court asserted that section 1152(a)(1)(A) "bears on [Plaintiffs'] applications for adjustment of status and work authorization, because those applications depend on visa availability, but does not apply to applications for naturalization or asylum." Op.107 (internal quotations omitted). Yet for that proposition, the court relied on a

15

different district court decision where there was apparently no dispute between the parties about whether 8 U.S.C. §1152(a)(1)(A) applies to adjustment of status or work authorization. *See Doe v. Trump*, 2026 WL 1170971, at \*16 & n.16 (D. Mass. Apr. 30, 2026). Here, the issue was not even raised by the Plaintiffs at summary judgment, so the Government had no opportunity to provide its views.

Moreover, "[d]istinctions on the basis of nationality may be drawn in the immigration field by the Congress or the Executive [and must be upheld] [s]o long as [they] are not wholly irrational[.]" *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008) (alterations in opinion). If §1152(a)(1)(A) were interpreted to not allow USCIS to employ considerations of public safety or national security in adjudicating adjustment of status or work authorization by country, §1152(a)(1)(A) would override the well-understood ability of federal immigration authorities to consider country-based factors. Nevermind that the Country-Specific Factors Policy the administrative record specifies that as a result of the fact-finding conducted under 8 U.S.C. §1182(f), which described the country-specific concerns underpinning the Country-Specific Factors Policy, USCIS would use country-specific findings in assessing individual applications, but that the USCIS will not consider the applicant's nationality itself a significant negative factor. ECF 16-2, at 42. The district court thus erred in concluding that the purpose of the Country Specific Factors Policy was facially discriminatory at all. *Contra* Op.111.

16

### C. The Benefits-Hold Policy Is Neither Reviewable Nor Contrary to Law

1.  Much like the County-Specific Factors Policy, the Benefits Hold Policy is not reviewable. Congress expressed a clear intent to preclude judicial review of USCIS's discretionary decisions, 8 U.S.C. §1252(a)(2)(B), and that certainly encompasses the process leading up to that final decision—including a hold on issuing final decisions to address security concerns. *Supra* pp.10-12; *Doe*, 2026 WL 1825840, at \*8. Similar reasoning precludes review of the Benefits Hold Policy as applied to asylum, the grant of which is committed to agency discretion by law and is not reviewable under the APA. *Supra* p.13.

The district court concluded that §1252(a)(2)(B)(ii) does not preclude review of the Benefits Hold Policy under the reasoning of *Kucana v. Holder*, 558 U.S. 233 (2010). *See* Op.31-36. However, the Supreme Court there concluded that the denial of a motion to reopen was not subject to the review bars because it "does not direct the Executive to afford the alien substantive relief," unlike "substantive decisions" like adjustment of status, §1255" and "[o]ther decisions specified by statute "to be in the discretion of the Attorney General" are "of like kind." *Kucana*, 558 U.S. at 247-48. Put simply, adjustment of status and the decision whether to grant employment authorization are forms of substantive relief. The district court instead concluded that §1252(a)(2)(B)(ii) does not apply only by changing the question, and stating that the jurisdictional bar applied only if "any legislation confer[ed] USCIS to place a hold on the adjudication of

17

adjustment of status and employment authorization." Op.32. That fails to account for the fact that §1252(a)(2)(B)(ii) precludes review not only of the final decision whether to provide the benefits, but also to subsidiary decisions leading to that final decision. *Supra* pp.11-12.

Significantly, the Courts of Appeals have almost uniformly held that Section 1252(a)(2)(B)(ii) bars jurisdiction over challenges to USCIS's visa retrogression policies and that challenges to the adjudication of adjustment of status applications—such as decisions to hold applications in abeyance or to require additional vetting—fall within §1252(a)(2)(B)'s jurisdictional bar. *E.g.*, *Kale v. Alfonso-Royals*, 139 F.4th 329, 334-36 (4th Cir. 2025). That conclusion is reinforced by *Gupta v. Jaddou*, where this Court held that 8 U.S.C. §1255(a) does not address how or when the Secretary must adjudicate adjustment applications once filed, but instead leaves the timing and procedural sequencing of adjudication to the agency's discretion under its implementing regulations. 118 F.4th 475, 483-85 (1st Cir. 2024). The district court attempted to distinguish the visa retrogression cases on the basis that regulations adopted by USCIS pursuant to §1255(a) provided USCIS discretion to hold applications, whereas no such statutory or regulatory authority did so here. Op.37-38. That confuses the merits of a particular application of discretionary authority with the threshold jurisdictional question and, regardless, too narrowly restricts the jurisdictional bar at §1252(a)(2)(B)(ii). *See supra* pp.10-12.

18

2.  Even if reviewable, the Benefits Hold Policy is not contrary to law.  The INA does not require the adjudication of the benefits applications in a specified period of time (at least one that is reviewable) and USCIS did not need clear congressional authorization to apply a hold on issuing its discretionary adjudicatory decisions.

a.   The district court reasoned based on various statutory and regulatory provisions, that adjudication was required within a certain timeframe, *see* Op.47-51, seemingly regardless of whether USCIS had sufficient information or not.  For example, the Court noted that 8 U.S.C. §1158(d)(5)(A)(iii) provides that asylum applications "shall be completed within 180 days" of filing in the absence of exceptional circumstances. Op.47.  Even aside from whether obtaining requisite security information is an exceptional circumstance under that subsection, Congress has explicitly precluded any private rights stemming from this timing provision.  8 U.S.C. §1158(d)(7).  Therefore, the district court erred in finding that statute created an enforceable right to adjudication within a particular timeframe.

Further, and as the district court acknowledged, the statutes governing adjustment of status and employment authorization themselves "use discretionary terms." Op.96. While the district court reasoned that "the relevant statutes and regulations" concerning adjustment of status and employment authorization contain mandatory terms, those terms pertain to the fact that the *applicant* must apply for adjustment of status or employment authorization, and thereafter the applicant "shall be notified" of the agency's decision.  Op.96-97.  To state the obvious: a mandate on

19

the *applicant* creates no obligations on the *government*. And a mandate to notify an applicant of a decision once made does not create a mandate to make a decision within a particular timeframe. Moreover, as the district court acknowledged, a different statute, 8 U.S.C. §1571(b), states that Congress believes that "the processing of an immigration benefit application *should*"—not must—"be completed not later than 180 days after the initial filing of the application[.]" At bottom, the district court's analysis fails because USCIS has not "categorically withheld adjudication of immigration benefits." *Contra* Op.100. Rather, the USCIS has temporarily paused the final adjudications of certain specified applications, which is well within its discretionary authority.

While the district court concluded that the Benefits Hold Policy contravened Congress' intent that benefits adjudication should generally proceed, *see* Op.100, that conclusion overlooks other saliant factors, and particularly Congress' broader intent in enacting our country's immigration laws.

Congress has expressly declared that the DHS's "primary mission" includes "prevent[ing] terrorist attacks within the United States." 6 U.S.C. §111(b)(1)(A). Congress broadly delegated immigration and enforcement to various Executive personnel, *e.g.*, *id.*; 8 U.S.C. §1103(a)(1)—and adjudication of immigration benefits specifically to the USCIS, *e.g.*, 6 U.S.C. §271(b). Under the INA, Congress made the validity of an alien's admission to the United States a necessary and express prerequisite for nearly all immigration benefits. Among the substantive grounds that Congress

20

commanded the Executive Branch to assess in considering the validity of any alien's admission are "[s]ecurity and related grounds" expressly set forth in 8 U.S.C. §1182(a)(3)—including an alien's criminal history, *id.* §1182(a)(2); participation in terrorist activities, *id.* §1182(a)(3)(B); and any "reasonable ground" for the Secretary of State "to believe" admission "would have potentially serious adverse foreign policy consequences for the United States," *id.* §1182(a)(3)(C)(i). These standards apply through the investigation and adjudication of applications for immigration benefits— processes that the INA and its regulations also command. These provisions thus impose affirmative duties to obtain and exchange security information—duties that cannot be fulfilled if applications are adjudicated before adequate information is obtained.

c. Although the district court did not use the words "major questions doctrine," its opinion indicates that it was looking for clear statutory authorization for the hold policy. *See* Op. 24-26, 100. For example, the court stated agreement with the Plaintiffs that "[h]ad Congress intended to give USCIS that sweeping authority" to impose holds on adjudication decisions, "it surely would have said so." Op.100. The court did so even though the grant of these benefits is discretionary, as discussed above. *Supra* pp.10-13.

Thus, it appears from the district court's opinion that adjudication holds are never permitted by the INA under any circumstances. If a one-week (or one day) hold on applications from a particular country or countries would never be permissible,

21

regardless of the national security and foreign policy-related grounds at play, that is inconsistent with Congressional intent. *E.g.*, 6 U.S.C. § 111(b)(1)(A). And in the context of immigration benefits where Congress has granted explicit discretion to the Executive Branch, looking for clear statutory authorization to enact the holds is entirely the wrong exercise. The district court should have looked only for any limits on that discretion, not whether Congress explicitly authorized the Benefits Hold Policy.

### D. The Challenged Policies Are Not Arbitrary or Capricious

The district court concluded that the Challenged Policies are all arbitrary and capricious because USCIS did not offer reasoned explanation, failed to considered reliance interests, and employed pretextual reasoning. Op.112-128. The district court erred with respect to each reason.

*First*, USCIS explained at length the reasons for the Challenged Policies. The administrative record identifies the national-security, public-safety, and vetting concerns that prompted the policies, explains why USCIS determined that additional scrutiny and enhanced vetting measures were necessary, and articulates the agency's rationale for temporarily pausing final adjudications while those measures are assessed and implemented. *See* ECF 21, at 10-14, 44 (citing policies). The policies themselves delineate and address concerning deficiencies in the quality and integrity of information provided from certain countries to vet the eligibility of individuals who seek or already possess immigration benefits. *See* ECF 16-1, at 72; ECF 16-2, at 1; ECF 16-3, at 45. Although the district court disagreed with the sufficiency of those explanations and

ultimately concluded that the policies were pretextual, Op.113-127, that disagreement does not alter the fact that the agency provided reasons for its actions in the administrative record. This is not a case where the agency utterly failed to explain itself in violation of *State Farm*; instead, the district court found USCIS's explanation *unpersuasive*. But such policy disagreement does not establish an APA violation. *C.f. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("Not having discussed the possibility [of a mandatory airbag standard], the agency submitted no reasons at all.").

*Second*, USCIS plainly *did* consider the reliance interests at stake here. *See, e.g.*, ECF 16-1, at 3. Indeed, Plaintiffs seemingly conceded as much in briefing. *See* ECF 20-1, at 41 (citing ECF 16-3, at 48). The agency reasonably determined that the national security interests at play here outweighed those reliance interests. While the district court determined that was insufficient, *see* Op.118-19, the agency's actual balancing of those reliance interests belies the district court's conclusion that no such weighing occurred. And the reasonability of the agency's conclusions is underscored by the fact that Plaintiffs' reliance interests must also account for USCIS's longstanding regulations that already permit prolonged investigations, and a long string of case law that strips the courts of power to set deadlines for action.

*Third*, the district court's determination that USCIS provided "pretextual reasons" for its policies, Op.120-27, further demonstrates the Government is likely to succeed on the merits. The district court's consideration of extra-record, cherry-picked

statements on social media, Op.11-13, did not permit it to disregard the agency's stated rationale and invalidate the policies based on perceived deficiencies in the agency's explanation rather than the absence of one. *See FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 567 (2025); *Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015) (the APA standard of review is "narrow," and "a reviewing court may not substitute its judgment for that of the agency, even if it disagrees with the agency's "conclusions"") (cleaned up).

In *Trump v. Hawaii*, the Supreme Court rejected the same extra-record, allegations-of-animus that the district court relied on here. *See* 585 U.S. at 685-707; *but see* Op.120-28. The Supreme Court emphasized that the Proclamation at issue reflected an in-depth analysis of relevant conditions, including country conditions. *See* 585 U.S. at 706-10. Here, too, the Presidential Proclamation (and subsequent memoranda) contain in-depth analyses and discussions of country conditions supporting the Challenged Policies. *See* ECF 16-1, 16-2, 16-3.

As in this case, the Plaintiffs in *Hawaii* argued that the Proclamation there was motivated by animus toward a particular group and cited the President's social media statements as evidence, but the Supreme Court rejected that argument. *See* 585 U.S. at 681, 699-710. The *Hawaii* Court observed that the standard of review is rational basis scrutiny, *i.e.*, that the animus claim could only succeed if it is "impossible to discern a relationship to legitimate state interest[,]" or that the policy is "inexplicable by anything but animus." *Id.* at 670 (internal quotations omitted). Here, as in *Hawaii*, the Presidential Proclamation and resulting policies "cannot be said that it is impossible to

24

discern a relationship to legitimate state interests or that the policy is inexplicable by anything but animus." *See id.* at 706. (internal quotations omitted). Instead, the question is whether the Challenged Policies "plausibly related to the Government's stated objective to protect the country and improve vetting processes." *Id.* at 704-05. As discussed above, the policies challenged here do.

In its opinion denying a stay, the district court asserted that *Hawaii* is distinguishable because it considered only whether the entry policy violated the First Amendment's Establishment Clause and not the APA's arbitrary-and-capricious standard. Stay Op.14. But arbitrary-and-capricious review of agency decisions "is highly deferential, and the agency's actions are presumed to be valid." *River St. Donuts LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009). If the "agency's decision is supported by a rational basis," then courts "must affirm." *Id.* As the Government argued in advocating for a stay, *Hawaii* demonstrates how "rational basis scrutiny" operated when similar facts were present. ECF 46, at 32.[3]

The Government is likely to succeed on appeal in demonstrating that the Challenge Policies are not arbitrary and capricious.

---

[3] The district court also asserted that the Government failed to raise the *Hawaii* standard at summary judgment, but the court also admits that the Government raised the rational-basis standard for the pretext claim. Stay Op.14-15.

## II.    The Equitable Factors Favor a Stay

The Government is suffering irreparable harm every day the vacatur remains in effect.    USCIS adopted the Challenged Policies to address deficiencies in the information available to vet applicants from designated countries and ensure immigration benefits are not (and were not) granted before potentially significant national-security, public safety, and terrorism-related concerns have been adequately investigated and resolved.  Those determinations did not arise in a vacuum.  USCIS identified significant concerns regarding the availability, reliability, and completeness of vetting information from the designated countries.  *See* ECF 21, at 10-14 (citing examples); *see also* ECF 46-1, Alfonso-Royals Decl. ¶¶ 5-7, 13-14.  USCIS determined that existing adjudicatory procedures should be supplemented by enhanced vetting measures before final immigration-benefit decisions are rendered in affected cases and agency adjudicators should consider issues like insufficient vetting and screening that results from the lack of reliable information.  *See* Alfonso-Royals Decl. ¶¶ 8-11, 14.

USCIS is developing and implementing those enhanced vetting procedures and expects to complete that process in the coming weeks/months.  *See id.* ¶ 11.  The Challenged Policies allowed the agency to evaluate how best to address identified deficiencies in available screening information.  *See id.* ¶¶ 12-14.  The district court's order not only intrudes upon USCIS's lawful authority and prevents it from completing that process before resuming final adjudications; it requires the agency to proceed under inadequate procedures it has already determined warrant further review and

26

enhancement, and hampers the agency's ability to review previously granted benefits that may have been wrongly granted. *See id.* ¶¶ 13-14.

The district court's order therefore places USCIS in an untenable position. Requiring USCIS to proceed with adjudications before those concerns have been fully investigated and before enhanced vetting protocols are implemented compels the agency to make discretionary immigration decisions under circumstances the agency has determined are inadequate to protect national security and public safety. That harm cannot be remedied after the fact. Once discretionary immigration benefits are granted, the consequences of those decisions may be difficult or impossible to fully unwind. Indeed, the district court (wrongly) held that the agency could not reconsider them. *See id.* ¶¶ 12-14. The risk that immigration benefits may be granted before relevant, significant, security concerns are identified and resolved constitutes irreparable harm to the Government and the public. Even where subsequent review mechanisms are available, they cannot eliminate risks associated with granting discretionary immigration benefits before USCIS has completed the vetting process it has determined is necessary to make informed decisions.

Although USCIS possesses some authority to revisit prior decisions, reconsideration and revocation mechanisms are not substitutes for informed decision-making in the first instance. Absent a stay, USCIS will be required to adjudicate applications under procedures it has determined warrant further enhancement, only to revisit those same applications after enhanced vetting protocols are implemented or the

27

Government ultimately prevails on appeal. The duplication of effort, diversion of agency resources, and disruption of ongoing implementation efforts constitute independent irreparable harms. The Government will therefore suffer from the same sorts of harm—diversion of scarce resources and resource diversion and disruption of ongoing operations—that the district court found would harm Plaintiffs.

The district court's sweeping decision undermines the Executive Branch's broad constitutional and statutory authority over immigration, and constitutes an "unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013). Precluding the government from ensuring that immigration decisions are consistent with national security as codified by Congress in the INA endangers the public and is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993).

Nor would a stay pending appeal impose comparable harm on Plaintiffs. Adjudication of many of the affected immigration benefits frequently requires months—and often substantially longer. *See* ECF 21, at 36 n.21. Temporary continuation of the Challenged Policies while USCIS completes implementation of enhanced vetting procedures, *see* Alfonso-Royals Decl. ¶¶ 8-15, and while appellate review proceeds would preserve existing agency processes rather than impose materially different delays from those already associated with complex immigration-benefit adjudications. Resources steered towards aliens from the impacted countries will also

28

result in slower adjudications for aliens from other countries. Any incremental delay attributable to a stay is outweighed by the Government's compelling interest in ensuring that discretionary immigration benefits are not granted before identified vetting concerns have been adequately addressed. And Plaintiffs can only speculate whether reviewing previously granted benefits to aliens from high-risk countries will ultimately cause them harm—nevermind that USCIS has authority to revoke benefits that should not have been granted initially.

Plaintiffs contend USCIS could simply continue adjudicating applications while implementing additional vetting measures. *E.g.*, ECF 20-1, at 44. That reflects a disagreement about timing, not outcome. USCIS determined a temporary pause was necessary to provide the agency time to develop and implement enhanced vetting procedures before finalizing adjudications. A stay pending appeal preserves the status quo: it maintains the agency's chosen method of addressing identified vetting concerns without creating a new or materially different form of delay. Given the lengthy processing times that frequently accompany complex immigration-benefit adjudications, any difference between temporarily pausing adjudications while enhanced procedures are implemented is likely to be marginal for many applicants.

The balance of harms, equities, and public interest overwhelmingly favor a stay pending appeal. *See Nken*, 556 U.S. at 435.

29

## CONCLUSION

For the foregoing reasons, the Court should grant an administrative stay and a stay pending appeal.[4]

|  | Respectfully submitted, |
|---|---|
|  | BRETT A. SHUMATE<br>   Acting Assistant Attorney General |
| AUGUST FLENTJE<br>Senior Counsel | DREW C. ENSIGN<br>   Deputy Assistant Attorney General |
| MARIE V. ROBINSON<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Office of Immigration Litigation<br>P.O. Box 878, Ben Franklin Station<br>Washington, DC 20044 | *s/ Tyler J. Becker*<br>TYLER J. BECKER<br>   Counsel to the Assistant Attorney<br>   General<br>U.S. Department of Justice, Civil<br>Division<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530<br>(202) 514-2000 |
|  | Attorneys for Defendants-Appellants |

July 2026

---

[4] Plaintiffs oppose this motion.

## CERTIFICATE OF COMPLIANCE

This brief has been filed with a motion for leave to exceed the word limits of Federal Rule of Appellate Procedure 27(d)(2)(A).  The brief contains 7,000 words.  This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Tyler J. Becker*
TYLER J. BECKER

# CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

*s/ Tyler J. Becker*

TYLER J. BECKER