No. 26-1703

**IN THE UNITED STATES COURT OF APPEALS FOR THE
FIRST CIRCUIT**

Dorcas International Institute, et al.,
*Plaintiffs-Appellees*,

v.

United States Citizenship and Immigration Services, et al.,
*Defendants-Appellants*.

On Appeal from the United States District Court for the District of Rhode Island
No. 1:26-cv-00132-JJM-PAS
The Honorable John J. McConnell, Jr.

**PLAINTIFFS-APPELLEES' OPPOSITION TO
DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR STAY
PENDING APPEAL**

Ryan Cooper
Anashua Dutta
Catherine M.A. Carroll
Robin F. Thurston
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
202-448-9090
rcooper@democracyforward.org
adutta@democracyforward.org
ccarroll@democracyforward.org
rthurston@democracyforward.org

Amy R. Romero
Kevin Love Hubbard
Lawyers' Committee for Rhode Island
199 North Main Street
Providence, RI 02903
401-453-1500

amy@dwbrlaw.com
kevin@dwbrlaw.com

Melissa Keaney
Abbey Koenning-Rutherford
Reem Subei
Muslim Advocates
1032 15th Street NW No. 362
Washington, DC 20005
202-655-2969
melissa@muslimadvocates.org
abbey@muslimadvocates.org
reem@muslimadvocates.org

Vijay Bondada
South Asian American Justice
Collaborative
333 West San Carlos Street Suite 600
San Jose, CA 95110
408-550-9240
vijay.bondada@saajco.org

*Counsel for Plaintiffs-Appellees*

# CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Appellees have no parent corporations, and no publicly held corporation holds a 10% or greater ownership interest in any of the Plaintiff entities.

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................... i

Table of Contents ..................................................................................... ii

Table of Authorities................................................................................. iii

Introduction .............................................................................................1

Background ..............................................................................................4

I.      The Travel Ban .................................................................................4

II.     The Challenged Policies ...................................................................5

III.    This Lawsuit ...................................................................................6

Argument.................................................................................................7

I.      The government is not likely to succeed on the merits. ...................7

      A.     Jurisdiction is not barred by the INA. ................................. 7

      B.     The Challenged Policies are reviewable under the APA.................... 14

      C.     The Challenged Policies violate the APA. ........................................ 19

II.     The balance of the equities and the public interest counsel against a stay....25

      A.     The government is not irreparably harmed by an order vacating unlawful policies. ............................................................... 25

      B.     A stay would harm Plaintiffs and the public. ..................................... 31

Conclusion ............................................................................................31

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Cases**

*Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28 (1st Cir. 2026) ......................................26

*Am. Pub. Health Ass'n v. NIH*, 145 F.4th 39 (1st Cir. 2025) ...................................30

*Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) .................... 15, 16

*Ass'n of Am. Univs. v. DOD*, 792 F. Supp. 3d 143 (D. Mass. 2025) ........................23

*Behdin v. Edlow*, No. 26-cv-00566, 2026 WL 1031079 (N.D. Cal. Apr. 16, 2026) ............................................................................................................. 24, 31

*Bennett v. Spear*, 520 U.S. 154 (1997)................................................................ 14, 16

*Biden v. Texas*, 597 U.S. 785 (2022)...................................................................11, 16

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971).......................17

*Civ. Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316 (1961) .......................22

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ....................................................25

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ......................................8, 17

*Doe v. Trump*, 157 F.4th 36 (1st Cir. 2025)...........................................................30

*Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL 1170971 (D. Mass. Apr. 30, 2026) ........................................................................................................ passim

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016)......................................24

*FEC v. Cruz*, 596 U.S. 289 (2022).........................................................................19

*Gupta v. Jaddou*, 118 F.4th 475 (1st Cir. 2024)................................................. 12, 13

*Haoud v. Ashcroft*, 350 F.3d 201 (1st Cir. 2003).....................................................17

*INS v. Legalization Assistance Project of Los Angeles County Federation of Labor*, 510 U.S. 1301 (1993) ............................................................. 29, 30

*INS v. Pangilinan*, 486 U.S. 875 (1988) ....................................................... 20

*Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81 (D.C. Cir. 2014) ................. 22

*Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18 (1st Cir. 2025) ..... 18

*Kale v. Alfonso-Royals*, 139 F.4th 329 (4th Cir. 2025) ............................... 13

*Kiobel v. Royal Dutch Petroleum Corporation*, 569 U.S. 108 (2013) ......... 29

*Kucana v. Holder*, 558 U.S. 233 (2010) ......................................................... 9

*Make The Rd. N.Y. v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020) ........................ 12

*Massachusetts v. NIH*, 164 F.4th 1 (1st Cir. 2026) ...................................... 24

*Massachusetts v. NIH*, 770 F. Supp. 3d 277 (D. Mass. 2025) ..................... 24

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) ............. 2, 8, 10, 11

*Mullin v. Doe*, 609 U.S. __, 2026 WL 1825840 (2026) ........................... 9, 10

*Nakka v. USCIS*, 111 F.4th 995 (9th Cir. 2024) ....................................... 9, 10

*Nat'l TPS All. v. Noem*, 150 F.4th 1000 (9th Cir. 2025) ............................. 22

*New Jersey v. Trump*, 131 F.4th 27 (1st Cir. 2025) ..................................... 30

*New York v. Trump*, 133 F.4th 51 (1st Cir. 2025) ....................................... 30

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................ 7

*Patel v. Garland,* 596 U.S. 328 (2022) .......................................................... 9

*Penobscot Air Servs., Ltd. v. FAA*, 164 F.3d 713 (1st Cir. 1999) ............... 24

*Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020) ........ 18

*R.I. State Council of Churches v. Rollins*, 158 F.4th 304 (1st Cir. 2025) .... 28

*Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43 (1993)......................................................8

*Rhode Island v. Trump*, 155 F.4th 35 (1st Cir. 2025)..................................................17

*Riva v. Com. of Mass.*, 61 F.3d 1003 (1st Cir. 1995) ................................................18

*Roe v. Mayorkas*, No. 22-cv-10808, 2023 WL 3466327 (D. Mass. May 12, 2023) ..........................................................................................................................12

*Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78 (1st Cir. 2013) ...................................................................................................................18

*Russello v. United States*, 464 U.S. 16 (1983) ..........................................................21

*Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005) ............................................... 2, 12, 14

*Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021)...............................................................11

*Trump v. Hawaii*, 585 U.S. 667 (2018).......................................................................25

*United States v. Zannino*, 895 F.2d 1 (1st Cir. 1990)................................................17

*Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) ...................................................19

*Varniab v. Edlow*, No. 25-cv-10602, 2026 WL 485490 (N.D. Cal. Feb. 20, 2026) ....................................................................................................... 27, 31

*Washington v. HUD*, 171 F.4th 473 (1st Cir. 2026) ...................................................11

*Zadvydas v. Davis*, 533 U.S. 678 (2001)....................................................................12

*Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189 (2012) ..................................30

**Statutes and Regulations**

8 C.F.R. § 103.2 ...........................................................................................................29

8 U.S.C. § 1158 ....................................................................................................... 20, 29

8 U.S.C. § 1182 .............................................................................................................21

8 U.S.C. § 1252 ...................................................................................8, 11, 13, 21

8 U.S.C. § 1254a ..............................................................................................10

8 U.S.C. § 1255 ................................................................................................13

8 U.S.C. § 1256 ......................................................................................... 22, 29

8 U.S.C. § 1427 ................................................................................................29

8 U.S.C. § 1446 ................................................................................................20

8 U.S.C. § 1447 ................................................................................................20

8 U.S.C. § 1451 ......................................................................................... 22, 29

8 U.S.C. § 1571 ................................................................................................20

Exec. Order 14161, 90 Fed. Reg. 8451 (Jan. 20, 2025)..............................................4

Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025)............................4, 26

Proclamation No. 10998, 90 Fed. Reg. 59717 (Dec. 16, 2025) ..................... 4, 5, 26

**Other Authorities**

USCIS, Policy Manual, https://perma.cc/GX8V-FMV8 (May 2026) ....................29

## INTRODUCTION

Late last year, the United States Citizenship and Immigration Services (USCIS) shut down the legal immigration system for people from thirty-nine countries. The agency instituted a categorical hold on benefit adjudications for immigrants from these countries. It also amended its policy manual to require agency personnel to penalize these immigrants for their country of origin. And it initiated a comprehensive review of benefits previously granted to them. As a result, immigrants from the covered countries were suddenly unable to obtain citizenship, green cards, work permits, or other benefits. Those who had already obtained benefits faced a new risk that those benefits would be revoked and their future in this country put at risk.

The district court held that these policies exceed USCIS's authority under the Immigration and Nationality Act (INA) and are arbitrary and capricious. It accordingly vacated the policies under the Administrative Procedure Act (APA). The government is not entitled to a stay of that order.

The government has not demonstrated a likelihood of success on the merits. It mainly contends that jurisdiction is barred by 8 U.S.C. § 1252(a)(2)(B). But Supreme Court precedent teaches that the jurisdictional bars in the INA should ordinarily not foreclose judicial review of immigration policies. *E.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991). Applying that precedent, courts

have consistently held that Section 1252(a)(2)(B) bars review only of denials of relief in individual cases. It does not eliminate courts' role in deciding whether immigration policies are lawful. "[T]hat is a classic issue for the court to decide." *Succar v. Ashcroft*, 394 F.3d 8, 19 (1st Cir. 2005).

Here, the policies at issue are unlawful. In enacting them, the agency relied on 8 U.S.C. § 1182(f). But that statute authorizes the President to impose entry restrictions. It says nothing about USCIS's authority to suspend benefits adjudications for people already in the country. The government has now disclaimed reliance on Section 1182(f), but it has never identified any other statute that grants the sweeping power it claims. The INA is a complex statutory regime that governs benefits adjudications in exacting detail. Had Congress intended USCIS to have the power to withhold, deny, and reconsider benefits adjudications for any reason it chooses, Congress would have said so.

Even if the policies were authorized by statute, they would still be unlawful because they are arbitrary and capricious many times over. The district court held that USCIS contravened the reasoned decision-making requirement because it did not offer any non-conclusory explanation for the policies, it did not consider the reliance interests of the affected communities, and the scant reasoning it did provide was pretext offered to obscure anti-immigrant animus. The government makes no persuasive argument why this holding is likely to be reversed.

2

Nor has the government shown that it is suffering irreparable harm. It argues that the district court's decision requires it to conduct adjudications for people from countries with screening and vetting issues. But the majority of the thirty-nine countries covered by the policies were included for reasons that have nothing to do with screening and vetting. The government attempts to cure this problem by citing a new declaration from the Deputy Director of USCIS. But that declaration demonstrates an astounding misunderstanding of the policies. It purports to provide evidence that the covered countries are unable to provide information necessary for screening and vetting, but three of the countries it cites—Ethiopia, Liberia, and Pakistan—are not even among those covered by the policies. That the agency does not know which countries are covered by its own policies proves that its assertion of irreparable harm is not credible.

Lacking evidence of actual harm, the government retreats to alarmist warnings. But it does not explain how conducting adjudications for people already in the country somehow imperils national security. Nor does it explain why its suite of existing statutory authorities is insufficient to safeguard national security. The agency has long adjudicated benefits requests submitted by people from countries all around the world. It has the tools to do this work in a manner that promotes public safety. Indeed, the absence of any irreparable harm is evidenced by the government's lack of urgency in pursuing a stay. The government waited

3

weeks to seek a stay, and it cites no evidence of any actual harms that have occurred during the two months that have now passed since the district court issued its decision. Instead, the government relies entirely on speculation.

On the other side of the ledger, the policies challenged here upended the lives of immigrants around the country. Many lost their jobs. Others lost legal status. Some were separated from their families. Yet others were on the verge of becoming citizens only to have their naturalization ceremonies canceled. The district court's decision provided affected communities a measure of reprieve. If this Court grants a stay, the harms will begin anew.

## BACKGROUND

### I.    The Travel Ban

On the first day of President Trump's term, he directed his cabinet to compile a list of countries to include in a travel ban. Exec. Order 14161, 90 Fed. Reg. 8451 (Jan. 20, 2025). He then issued a proclamation barring nationals from nineteen countries from entering the United States. Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025). Several months later, he issued a second proclamation expanding the list of countries to thirty-nine. Proclamation No. 10998, 90 Fed. Reg. 59717 (Dec. 16, 2025) ("Travel Ban"). The President enacted the Travel Ban pursuant to 8 U.S.C. § 1182(f), a provision in the INA that authorizes the President to restrict noncitizens from entering the country if

4

allowing entry "would be detrimental to the interests of the United States." Some of the countries covered by the Travel Ban were included due to purported screening, vetting, and security deficiencies, but the majority were included for other reasons, mainly high visa-overstay rates. 90 Fed. Reg. at 59722–27.

## II.    The Challenged Policies

Beginning in November 2025, USCIS adopted a series of policies restricting access to immigration benefits for people from Travel Ban countries. Unlike the Travel Ban itself, which restricts entry into the country, these policies prevent immigrants who are already here from obtaining benefits conferred by USCIS. Those benefits include naturalization, lawful permanent residence, employment authorization, and asylum, among others. Three policies (the "Challenged Policies") are at issue in this stay motion.

*First*, USCIS enacted an indefinite hold on the adjudication of benefits requests submitted by people from Travel Ban countries (the "Benefits Hold"). ECF 16-3 at CAR41–49.

*Second*, USCIS amended its Policy Manual to mandate country-of-origin discrimination (the "Country-Specific Factors Policy"). The revised manual requires USCIS personnel to consider each of the "country-specific facts and circumstances" discussed in the Travel Ban as "a significant negative factor" when weighing discretion. ECF 16-1 at CAR39. This policy effectively requires USCIS

adjudicators to penalize immigrants from Travel Ban countries (and potentially other countries as well). *Id.* at CAR72–73.

*Third*, USCIS enacted a new policy requiring agency personnel to reconsider benefits previously granted to noncitizens from Travel Ban countries (the "Comprehensive Re-Review"). ECF 16-3 at CAR41–49. The policy "mandates" that these non-citizens "undergo a thorough re-review process, including a potential interview … to fully assess all national security and public safety threats along with any other related grounds of inadmissibility or ineligibility." *Id.* at CAR41.

## III.  This Lawsuit

Plaintiffs, a coalition of nonprofits, brought suit. ECF 1. After a hearing on cross-motions for summary judgment, the district court vacated the policies under the APA, holding that the Challenged Policies are unauthorized by statute and are arbitrary and capricious. Mem. Order, ECF 28 ("Op."). The district court entered partial final judgment. ECF 36, 37. The government appealed. ECF 39.

The government waited two weeks after the vacatur order to move for a stay pending appeal. ECF 46. After a hearing, the district court denied that motion. Order, ECF 51 ("Stay Op."). One week later, the government filed an emergency motion seeking a stay from this Court.

## ARGUMENT

The government is not entitled to a stay because it has not shown that it is likely to succeed on the merits, that it is suffering irreparable harm, or that the equitable factors favor a stay. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

### I.    The government is not likely to succeed on the merits.

### A.    Jurisdiction is not barred by the INA.

The district court correctly rejected the government's contention that jurisdiction is barred by 8 U.S.C. § 1252(a)(2)(B). Op. 26–39. Section 1252(a)(2)(B) strips courts of jurisdiction over decisions denying immigration relief in individual cases. It does not render courts impotent when USCIS institutes unlawful policies.

#### 1.    Jurisdiction is not barred by 8 U.S.C. § 1252(a)(2)(B)(i).

Section 1252(a)(2)(B)(i) bars review of "any judgment regarding the granting of relief under" certain provisions of the INA, including 8 U.S.C. § 1255, which governs adjustment of status. Section 1252(a)(2)(B)(i) at most bars jurisdiction over Plaintiffs' claims as applied to adjustment of status. It is not relevant to any other benefits affected by the Challenged Policies.

Even as to adjustment of status, Section 1252(a)(2)(B)(i) is inapplicable. Its text references an individual decision: It bars review over any "judgment" issued under the adjustment-of-status statute. There is no mention of policies or procedures in Section 1252(a)(2)(B)(i), nor any other textual indication that

7

Congress intended to bar programmatic challenges to immigration policy. Had Congress intended to bar challenges to immigration policy, it knew how to do so. *E.g.*, 8 U.S.C. § 1252(a)(2)(A)(iv) (barring jurisdiction over certain "policies and procedures"). But it did not do so here.

This reading of Section 1252(a)(2)(B)(i) finds support in nearly four decades of Supreme Court precedent. In *McNary*, the Court considered the scope of a closely analogous statute that barred jurisdiction over "a determination respecting an application for adjustment of status." 498 U.S. at 491. The Court explained that "the reference to 'a determination' describes a single act rather than a group of decisions or a … procedure … in making decisions." *Id.* at 492. The Court concluded that the statute barred only "direct review of individual denials," not "general collateral challenges" to the "practices and policies used by the agency." *Id.* Since *McNary*, the Court has repeatedly affirmed that statutory language barring review of individual immigration decisions should not be read to prevent courts from hearing challenges to immigration policy. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19–20 (2020); *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993).

The government's broader reading of Section 1252(a)(2)(B)(i) is also foreclosed by "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233,

251 (2010). It "takes clear and convincing evidence to dislodge the presumption." *Id.* at 252 (quotation omitted). The government cites no clear and convincing evidence that Congress intended to bar courts from reviewing immigration policies. Absent such evidence, Section 1252(a)(2)(B)(i) must be read as barring review only of individual judgments granting or denying adjustment of status.

Lower courts have consistently followed this precedent and held that Section 1252(a)(2)(B)(i) bars review only of individual adjustment-of-status decisions. *E.g.*, *Nakka v. USCIS*, 111 F.4th 995, 1009 (9th Cir. 2024) ("[W]e conclude that § 1252(a)(2)(B)(i) does not strip district courts of jurisdiction to hear collateral challenges to Defendants' generally applicable policies and procedures."); *Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL 1170971, at *8 (D. Mass. Apr. 30, 2026) (similar).

Neither *Patel v. Garland,* 596 U.S. 328 (2022), nor *Mullin v. Doe*, 609 U.S. __, 2026 WL 1825840 (2026), supports the government's contrary position.

In *Patel*, the Supreme Court held that Section 1252(a)(2)(B)(i) "precludes judicial review of factual findings that underlie a denial of relief." 596 U.S. at 331. *Patel* did not involve a challenge to the legality of agency policies and provides no guidance as to whether such a challenge is reviewable. As the Ninth Circuit observed, *Patel* holds only that Section 1252(a)(2)(B)(i) "covers every type of 'judgment' an adjudicator makes when deciding whether to grant an individual

9

application" and "neither considered nor decided whether it also encompasses generally applicable agency policies." *Nakka*, 111 F.4th at 1003; *Doe*, 2026 WL 1170971, at *8 (similar).

In *Mullin*, the Court interpreted 8 U.S.C. § 1254a(b)(5)(A), which bars review of "any determination of the Attorney General with respect to the designation, or termination or extension of a designation" under the Temporary Protected Status statute. Consistent with *Patel*, the Court held Section 1254a(b)(5)(A)'s reference to "any determination" also bars review of any "discrete decision" that is "subsidiary" to the final determination. *Mullin*, 2026 WL 1825840, at *7, *10. *Mullin* is distinguishable for the same reason as *Patel*. The decision is silent on whether a statute that bars review of an individual immigration determination also bars review of related immigration policies. But *McNary*, which the Court distinguished in *Mullin*, answers that question squarely. It held that when statutory language in a jurisdictional bar "refer[s] to 'a single act,' *i.e.*, a ruling on an individual application," it does not also bar "claims about the procedures used in implementing" the statutory program. *Mullin*, 2026 WL 1825840, at *8 (quoting *McNary*, 498 U.S. at 492). *McNary* remains good law and controls here.

## 2.    Jurisdiction is not barred by 8 U.S.C. § 1252(a)(2)(B)(ii).

Section 1252(a)(2)(B)(ii) bars review of "any other decision or action . . . which is specified under this subchapter to be in the discretion of the Attorney

General or the Secretary of Homeland Security." The government argues only that Section 1252(a)(2)(B)(ii) bars jurisdiction over Plaintiffs' claims as applied to adjustment of status and employment authorization but not any other benefit. Op. 31; ECF 21 at 17–19. It has therefore waived any argument that the provision has a more expansive reach. *Washington v. HUD*, 171 F.4th 473, 488–89 (1st Cir. 2026).

In any event, the government misreads Section 1252(a)(2)(B)(ii). The provision bars review of (1) "any . . . decision or action" that (2) is "specified" to be "in the discretion of" the agency. Neither element is satisfied.

First, Section 1252(a)(2)(B)(ii) refers to an individual "decision or action," much like Section 1252(a)(2)(B)(i) refers to an individual "judgment." The statutory text "describes a single act rather than . . . a practice or procedure." *McNary*, 498 U.S. at 492. Accordingly, Section 1252(a)(2)(B)(ii) should be read as barring review only of individual immigration decisions, not challenges to immigration policy. Other courts have consistently reached this conclusion. *See Texas v. Biden*, 20 F.4th 928, 977 (5th Cir. 2021), *rev'd and remanded on other grounds*, 597 U.S. 785 (2022) (Section 1252(a)(2)(B)(ii) does not bar review of "broad programmatic decisions"); *Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 630 (D.C. Cir. 2020) (Section 1252(a)(2)(B)(ii) does not bar review of "generally applicable . . . *procedures*"); *Roe v. Mayorkas*, No. 22-cv-10808, 2023 WL

11

3466327, at *7–8 (D. Mass. May 12, 2023) (Section 1252(a)(2)(B)(ii) does not bar review of "changes in policy" and collecting cases).

Second, Section 1252(a)(2)(B)(ii) applies only where a decision is "specified" to be "in the discretion" of the agency. It does not bar review of the legality of agency policies because the extent of an agency's statutory authority is not a matter of discretion. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (Section 1252(a)(2)(B)(ii) did not apply where plaintiffs "challenge[d] the extent of the Attorney General's authority under the … statute" and "the extent of that authority is not a matter of discretion"); *Succar*, 394 F.3d at 19 ("[The plaintiff] challenges … [a] regulation as being contrary to the statute; that is a classic issue for the court to decide. The issue presented is a purely legal question and as such is not within the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B).").

The government ignores that caselaw and instead relies on *Gupta v. Jaddou*, 118 F.4th 475 (1st Cir. 2024), and other cases considering the legality of USCIS's "visa retrogression" policy, under which USCIS defers adjudication of adjustment-of-status applications until an immigrant visa becomes available. Appellant's Br. at 18 ("Mot."). But *Gupta* did not address the scope of Section 1252(a)(2)(B)(ii); rather, this Court expressly declined to rule on jurisdictional grounds. 118 F.4th at 482.

The other visa-retrogression cases are no more compelling. Those cases turned on the fact that Section 1255(a) expressly authorizes the Attorney General to promulgate regulations governing the adjustment-of-status process, *see* 8 U.S.C. § 1255(a). The cases hold that this express statutory conferral of policymaking discretion and rulemaking authority renders the agency visa-retrogression policy unreviewable. *E.g.*, *Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025) ("USCIS is not only granted discretion with respect to the ultimate decision on whether to grant adjustment of status. USCIS also has the discretion to 'prescribe' the regulations that guide its exercise of the discretionary authority.").

These visa-retrogression cases are inapposite. For one thing, they involved individual adjudications, not policy challenges. Because they arose in the context of individual adjudications, each addressed the availability of review of a specific "decision or action" of the agency, 8 U.S.C. § 1252(a)(2)(B)(ii). *E.g.*, *Kale*, 139 F.4th at 335 (Section 1252(a)(2)(B)(ii) does not bar review of "high-level . . . policy choices" only individual "decisions").

Moreover, unlike the visa-retrogression cases, Plaintiffs here do not challenge regulations promulgated pursuant to a statutory conferral of policymaking discretion. The government has never cited any statute conferring it with unreviewable discretion to enact the Challenged Policies.

13

Finally, even if USCIS had enacted the Challenged Policies pursuant to a statutory conferral of discretion (which it did not), that would still not prevent the Court from reviewing the Challenged Policies to ensure that they do not exceed the agency's statutory authority, which "is a purely legal question and as such is not within the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)." *Succar*, 394 F.3d at 19.

**B.    The Challenged Policies are reviewable under the APA.**

The government also contends that neither the Country-Specific Factors Policy nor the Comprehensive Re-Review is a final agency action. Mot. 6–8, 13. It does not dispute that the Benefits Hold is final agency action.

To be considered final, an agency action must "mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations omitted). Both the Country-Specific Factors Policy and the Comprehensive Re-Review satisfy this test. Op. 51–61.

The Country-Specific Factors Policy was enacted through formal amendments to the USCIS Policy Manual and was made effective immediately. ECF 16-1 at CAR72–73. The policy thus marks the consummation of the agency's decisionmaking process. And the policy has legal consequences for benefits applicants from Travel Ban Countries, who are "'now viewed with enhanced

14

suspicion based on country of origin.'" Op. 61 (quoting *Doe*, 2026 WL 1170971, at *7).

All the government says in response is that the policy is mere "operational guidance" that does "not reflect the consummation of any agency action in any individual case." Mot. 13. But the first *Bennett* prong requires only that an agency's action mark the consummation of the agency's decision-making process. There is no requirement that the action resolve any individual case. A guidance document satisfies the first *Bennett* prong so long as it constitutes the "agency's settled position" that the agency "plans to follow" in resolving individual cases. *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000).

The Comprehensive Re-Review was also formally enacted and made "[e]ffective immediately." ECF 16-2 at CAR1. The policy thus reflects the consummation of the agency's decision-making process. And legal consequences flow from the policy insofar as it requires certain noncitizens to reestablish their eligibility for previously granted benefits, including by appearing for a "potential interview" and "re-interview." *Id.* The policy makes it more likely that benefits will be revoked, and as a result has already forced affected individuals to consult with counsel. ECF 20-3 ¶¶ 37–41.

The government is wrong to argue that the Comprehensive Re-Review is not final agency action because it is an "internal procedural directive." Mot. 6. There is

15

no rule that an internal directive is immune from APA review. The Supreme Court has held that internal agency policies constitute final agency action so long as they "alter the legal regime to which the action agency is subject," *Bennett*, 520 U.S. at 178, and bind agency personnel going forward, *Biden v. Texas*, 597 U.S. 785, 808–09 (2022). The Comprehensive Re-Review requires agency personnel to review past decisions granting benefits to people from Travel Ban countries. It creates a new legal regime where review of certain determinations is mandatory. This sort of "binding" policy exemplifies final agency action. *Appalachian Power*, 208 F.3d at 1022.

The government is also wrong to argue that the Comprehensive Re-Review is not final agency action because "[a]ny legal consequences would come from USCIS's subsequent decision to reverse the immigration benefit provided." Mot. 7. The policy has consequences for affected immigrants even if there is no ultimate decision to revoke a benefit because they are subject to a mandatory review process, are required to reestablish their eligibility, and face a heightened risk that benefits will be revoked. Unrebutted evidence shows that the Comprehensive Re-Review is already having legal consequences for individuals facing potential revocation. ECF 20-3 ¶¶ 37–41.

The government also makes two additional claims that question the reviewability of the Challenged Policies. First, in its discussion of jurisdiction, the

government briefly hints that the Country-Specific Factors Policy and the Benefits Hold are "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2). Mot. 10, 13. But "issues adverted to in a perfunctory manner … are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

Regardless, the district court appropriately dispensed with this argument. Op. 42–51. The Supreme Court has instructed lower courts to "read the exception in § 701(a)(2) quite narrowly," *Regents*, 591 U.S. at 17, to apply only when the "statutes are drawn in such broad terms that … there is no law to apply," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quotation omitted). But the government's authority regarding benefits adjudications is governed by a "detailed statutory and regulatory scheme," and there is accordingly "more than enough law" to apply. Op. 45 (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 206 (1st Cir. 2003)).

Second, included in its discussion of reviewability, the government suggests that Plaintiffs' challenge to the Comprehensive Re-Review is not ripe. Mot. 7–8. However, the government did not raise ripeness in its stay motion before the district court. The argument is therefore not a proper basis to seek a stay from this Court. *Rhode Island v. Trump*, 155 F.4th 35, 46–47 (1st Cir. 2025). In any event, at summary judgment, the district court correctly determined that the Comprehensive Re-Review is ripe. Op. 61–65.

17

There are two prongs to the ripeness analysis: "fitness" and "hardship." *Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18, 24 (1st Cir. 2025) (quotation omitted). Both are satisfied. The fitness prong is satisfied because Plaintiffs' challenge to the legality of the Comprehensive Re-Review presents a "purely legal question" that does not depend on further factual development. *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 828 (1st Cir. 2020). It does not matter whether "any particular benefit … has been revoked." Mot. 7. This Court has routinely found the fitness prong satisfied where the plaintiff facially challenges the legality of a written policy. *See Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 92–93 (1st Cir. 2013) (holding challenges ripe that "rest solely on the existence of [o]rdinance"); *Jensen*, 160 F.4th at 25 (similar and collecting cases).

The hardship prong is satisfied because unrebutted evidence establishes that the Comprehensive Re-Review has already inflicted harm on Plaintiffs by causing immediate fear, uncertainty, and confusion and requiring affected individuals to consult with counsel. ECF 20-3 ¶¶ 37–41; ECF 20-2 ¶¶ 33–35; *see also Riva v. Com. of Mass.*, 61 F.3d 1003, 1010 (1st Cir. 1995) ("[E]ven when the direct application of such a statute is subject to some degree of contingency, the statute may impose sufficiently serious collateral injuries that an inquiring court will deem the hardship component satisfied.").

18

### C.    The Challenged Policies violate the APA.

### 1.    The Challenged Policies exceed the agency's statutory authority.

The district court correctly held that the Challenged Policies exceed

USCIS's statutory authority. Op. 94–112. The government's counterarguments lack

merit.

### a.    The Benefits Hold

The government fails to "identify any statute or regulation that gives USCIS

the green light to indefinitely withhold adjudications." Op. 98. An agency "literally

has no power to act … unless and until Congress authorizes it to do so by statute."

*FEC v. Cruz*, 596 U.S. 289, 301 (2022) (quotation omitted). Courts "expect

Congress to speak clearly if it wishes to assign to an agency decisions of vast

economic and political significance." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302

(2014) (quotation omitted). In enacting the Challenged Policies, USCIS relied on 8

U.S.C. § 1182(f), but the authority granted in that provision is limited to entry

restrictions. The government now disclaims reliance on Section 1182(f), Op. 87,

but identifies no source of statutory authority.

The government instead claims it does not need congressional authorization

because "the grant of these benefits is discretionary." Mot. 21–22. But many of the

benefits adjudicated by USCIS are non-discretionary. For example, USCIS has no

statutory discretion with regard to naturalization and is required to grant citizenship

if the eligibility requirements are satisfied. *INS v. Pangilinan*, 486 U.S. 875, 884 (1988). In any event, even where the agency has discretion to grant or deny a benefit, that does not imply the agency has discretion to refuse to adjudicate altogether. To the contrary, there are ample indicia in the INA that Congress intended to withhold such discretion. For one, the INA uses mandatory language with regard to certain adjudications, *e.g.*, 8 U.S.C. §§ 1446(d), 1158(d)(5)(A), and it specifies the amount of time the agency has to complete others, *e.g.*, *id*. §§ 1447(b), 1158(d)(5)(A)(iii), 1571(b). These and other provisions in the INA reflect "the sense of Congress that the adjudication work of USCIS should at least proceed—not be brought entirely to a standstill." Op. 97.

The government notes that USCIS must investigate applicants to determine their admissibility and attend to any national-security concerns before granting immigration benefits. Mot. 20–21. But that does not imply that the agency has authority to withhold immigration benefits from people who pose no security threat and for whom there is no reason to suspect are inadmissible: "The charge to conduct investigations does not give USCIS authority to perpetually delay adjudication of applications, where Congress required USCIS to make such decisions." Op. 100 (quoting *Doe*, 2026 WL 1170971, at *15).

20

### b.     The Country-Specific Factors Policy

The Country-Specific Factors Policy exceeds USCIS's statutory authority for the same reason. The government does not point to any statute that authorizes it to mandate country-of-origin discrimination in the adjudication of immigration benefits. Tellingly, Congress expressly authorized the President to "suspend the entry" of "any class of" noncitizens, 8 U.S.C. § 1182(f), but did not similarly authorize the categorical exercise of discretion against a class of noncitizens in the context of benefits adjudications. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (Congress acts intentionally when it "includes particular language in one section of a statute but omits it in another").

Rather than identify any source of authority for the Country-Specific Factors Policy, the government focuses on whether the policy affirmatively violates 8 U.S.C. § 1152(a)(1)(A), a provision of the INA that bans discrimination on the basis of "nationality, place of birth, or place of residence" (and whether that issue was adequately briefed). This misses the point. Whether or not the Country-Specific Factors Policy violates Section 1152(a)(1)(A)—and the district court correctly held that it does—it is nonetheless a vast assertion of power that far exceeds any authority granted in the INA.

21

### c.    The Comprehensive Re-Review

Likewise, the INA does not "authorize or even contemplate USCIS's large-scale re-review of all noncitizens from certain countries who have already been approved for immigration benefits." Op. 105. As the district court explained, "agencies generally may not 'expand their powers of reconsideration without a solid foundation in the language of a statute.'" *Id.* at 102 (quoting *Civ. Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 333 (1961)).

The government cites two out-of-circuit cases holding that agencies have some authority to reconsider past decisions. Mot. 8. But both cases recognize that any inherent authority an agency might have to reconsider past decisions is displaced where Congress has specified a particular process. *See Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (Kavanaugh, J.) ("any inherent reconsideration authority does not apply in cases where Congress has spoken"); *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1019 (9th Cir. 2025) (similar). Here, Congress has specified in exacting detail when and how USCIS may reconsider past benefits determinations, requiring that any reconsideration must be based on an individualized assessment in individual cases. *E.g.*, 8 U.S.C. §§ 1451(a), 1256.

While the government asserts that "nothing in the Comprehensive Re-Review policy indicates that USCIS will not undertake an individualized assessment," Mot. 9, it is not enough for an agency to provide someone

22

individualized consideration before stripping them of citizenship, permanent residence, or other statuses. The agency must follow the procedures specified by Congress. USCIS cannot implement a sweeping program to reconsider past benefits determinations by executive fiat. The government has not cited any authority suggesting otherwise.

### 2. The Challenged Policies are arbitrary and capricious.

Even if the Challenged Policies were authorized by statute, that would not warrant a stay because they are also arbitrary and capricious. The district court held that the Challenged Policies fall short of reasoned decision-making for three reasons: "(1) USCIS did not offer a reasoned explanation for its policies; (2) USCIS did not consider the reliance interests of the noncitizens who rely on the agency to adjudicate immigration benefits; and (3) to the extent USCIS did provide any explanation for the Challenged Policies, its reasoning was pretextual." Op. 112–13. The government fails to show that these holdings are likely to be reversed.

First, the district court's application of the arbitrary-and-capricious standard was no mere "policy disagreement." Mot. 23. Arbitrary and capricious review "is not a rubber stamp." *Ass'n of Am. Univs. v. DOD*, 792 F. Supp. 3d 143, 169–70 (D. Mass. 2025) (quotation omitted). The reviewing court is required to "undertake a thorough, probing, in-depth review and a searching and careful inquiry into the

23

record." *Penobscot Air Servs., Ltd. v. FAA*, 164 F.3d 713, 720 (1st Cir. 1999) (quotation omitted). USCIS's vague invocations of "national-security, public-safety, and vetting concerns," Mot. 22, fall far short of satisfying that standard, Op. 113–15.

Second, the government's insistence that USCIS "*did* consider the reliance interests," Mot. 23, is unsupported by the record. The government cites a brief statement that "USCIS has considered that" the Benefits Hold "may result in delay to the adjudication of some pending applications" but nonetheless determined that those delays are "necessary" in light of "national security." ECF 16-2 at CAR-3. That statement "is 'merely conclusory' and 'provides no explanation as to how USCIS "weighed" the competing factors and determined that the consequences of delays … were necessary.'" Op. 118–20 (quoting *Behdin v. Edlow*, No. 26-cv-00566, 2026 WL 1031079, at *21 (N.D. Cal. Apr. 16, 2026)). Where there are "serious reliance interests at stake … conclusory statements do not suffice." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016); *see also Massachusetts v. NIH*, 770 F. Supp. 3d 277, 310 (D. Mass. 2025), *aff'd*, 164 F.4th 1 (1st Cir. 2026) (rejecting agency's "conclusory" consideration of reliance interests).

Third, the government makes no attempt to rebut any of the evidence showing that the agency's stated reasons for enacting the Challenged Policies were pretext offered to obscure anti-immigrant animus. Op. 120–27; ECF 20-1 at 49–51.

24

Instead, it invokes the deferential standard of review set forth in *Trump v. Hawaii*, 585 U.S. 667 (2018). Mot. 24–25. But in *Trump v. Hawaii*, the Supreme Court considered a First Amendment Establishment Clause claim, not an APA arbitrary-and-capricious claim. Where the Supreme Court did consider an APA arbitrary-and-capricious claim, it made clear that a policy cannot survive arbitrary-and-capricious review if there is "a significant mismatch" between the agency's stated reasoning and its actual motives. *Dep't of Com. v. New York*, 588 U.S. 752, 755 (2019). The government does not mention, much less grapple with, *Department of Commerce*.

## II. The balance of the equities and the public interest counsel against a stay.

The remaining *Nken* factors all counsel against a stay.

### A. The government is not irreparably harmed by an order vacating unlawful policies.

Despite having demonstrated no urgency in pursuing a stay, the government nonetheless claims it is suffering irreparable harm. Its main argument is that USCIS adopted the Challenged Policies to address concerns regarding "vetting information from the designated countries" and that the district court's order requires the agency to adjudicate benefits requests before those concerns "have been adequately investigated and resolved." Mot. 26. This argument is at most a reason why USCIS should not be required to "proceed with adjudications." *Id.* at 27. Accordingly, even if the argument were persuasive, it would warrant only a

stay of the vacatur of the Benefits Hold, not the other policies. But the argument is not persuasive.

The government's assertion that the thirty-nine countries covered by the Challenged Policies all have "identified deficiencies" with regard to "vetting and screening" is belied by the record. The Travel Ban purports to cover countries for various reasons. While some countries were included based on alleged "inadequacies in screening, vetting, and provision of information," 90 Fed. Reg. at 59717, most of the countries were included for other reasons. Twenty-one of the thirty-nine were included because they have a high "visa overstay rate" or do not "accept back … removable nationals." *Id.* at 59722–27; 90 Fed. Reg. at 24499–502. Only a handful were included because of screening, vetting, or information-sharing deficiencies. 90 Fed. Reg. at 24498–502; 90 Fed. Reg. at 59722–27.

The new declaration from the Deputy Director of USCIS that the government submitted with its stay motion in the district court cannot fill this hole in the record. ECF 46-1; *see* Mot. 26, 28. The Court need not consider this "post hoc rationalization." *Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 34 (1st Cir. 2026). But even if it were not too late to rehabilitate deficiencies in the record, there is another even more glaring issue with the declaration: It purports to justify the Benefits Hold by citing shortcomings in countries that are not even covered by the policy. Stay Op. 22–24. The declaration states that "countries impacted by the

26

vacated hold policies generally possess little to no credible identity management infrastructure." ECF 46-1 ¶ 7. It then gives ten examples, but the examples include three countries that are not covered by the Benefits Hold: Ethiopia, Liberia, and Pakistan. *Id.* ¶ 7(e), (g), (h). It is simply not credible for the government to assert irreparable harm when the Deputy Director of USCIS does not know (and did not confirm before submitting sworn testimony) which countries are covered by the agency's own policies. And the fact "that USCIS can and does adjudicate applications for individuals from Ethiopia, Liberia, and Pakistan, despite the alleged screening and vetting deficiencies, 'belies any suggestion of irreparable harm.'" Stay Op. 23–24.

Moreover, even if it were true that the Travel Ban countries all had screening and vetting deficiencies, it would not follow that the government is being irreparably harmed. The government has never explained why screening and vetting deficiencies somehow require restricting access to benefits for people who are already in the country—many of whom have been here for years. The Travel Ban proclamations "focus solely on restricting *entry* of noncitizens," but the Challenged Policies withhold immigration benefits from people "*who have already been admitted to the United States*." Op. 114 (quoting *Varniab v. Edlow*, No. 25-cv-10602, 2026 WL 485490, at *19 (N.D. Cal. Feb. 20, 2026)). There is no evidence or reasoning "linking the findings from the Presidential Proclamations …

27

to a decision to suspend adjudication of benefit applications." *Id.* at 114–15 (quoting *Doe*, 2026 WL 1170971, at \*18). Absent such a link, the government cannot show irreparable harm.

Further, the government has "fail[ed] to demonstrate that it '*will* be irreparably injured absent a stay.'" Stay Op. 21 (quoting *R.I. State Council of Churches v. Rollins*, 158 F.4th 304, 316 (1st Cir. 2025)). The government's asserted harms here are purely speculative, as evidenced by the fact that the Challenged Policies have now been vacated for two months, yet the government has cited no actual harm it has suffered in that time. Instead of marshaling evidence of harms that have actually occurred, the government cites the mere "risk" that "benefits may be granted before relevant, significant, security concerns are identified and resolved." Mot. 27. But "[t]hese statements hardly exude certitude." Stay Op. 21. And the government's "speculative predictions" are not a proper basis for a stay. *R.I. State Council of Churches*, 158 F.4th at 316.

Finally, even assuming that security reasons warrant withholding immigration benefits in particular cases, that would not suffice to show irreparable harm because USCIS has several existing tools at its disposal to address those needs. USCIS has the authority to take into account individual factors pertaining to an applicant's suitability to receive immigration benefits, including the authority to exercise discretion against unsuitable applicants, *e.g.*, USCIS, Policy Manual vol. 1, pt. E,

28

ch. 8, https://perma.cc/GX8V-FMV8 (May 2026), and other authorities that allow it to deny non-discretionary benefits on related grounds, *e.g.*, 8 U.S.C. § 1427(a). USCIS can also withhold an adjudication when there is a pending security investigation, 8 C.F.R. § 103.2(b)(18), and can revoke benefits in a variety of circumstances. 8 U.S.C. §§ 1451, 1158(c)(2), 1256(a). The government never explains why these tools are insufficient to prevent its purported injuries.

Unable to identify any concrete harm, the government falls back on a more abstract theory: that the district court's decision "undermines the Executive Branch's broad constitutional and statutory authority over immigration." Mot. 28. But neither of the cases cited support that position. The government quotes language in *Kiobel v. Royal Dutch Petroleum Corporation*, 569 U.S. 108, 116 (2013), referencing "unwarranted judicial interference in the conduct of foreign policy." But that case involved allegations that foreign corporations "aided and abetted … violations of the law of nations in Nigeria." *Id.* at 112. The issue was the extraterritorial reach of the Alien Tort Statute. *Id.* Neither *Kiobel*'s facts nor its holding are remotely relevant.

The government then cites *INS v. Legalization Assistance Project of Los Angeles County Federation of Labor*, 510 U.S. 1301 (1993) (O'Connor, J., in chambers). But in that case, Justice O'Connor found an injunction to be "an improper intrusion by a federal court into the workings of a coordinate branch"

29

only because the government had shown that the plaintiffs likely "had no standing." *Id.* at 1305–06. Here, standing is undisputed. The government has repeatedly invoked *Legalization Assistance Project* when seeking a stay from this Court, and this Court has distinguished it on precisely that basis. *See New Jersey v. Trump*, 131 F.4th 27, 40–41 (1st Cir. 2025) (distinguishing *Legalization Assistance Project* because the government did not demonstrate that the plaintiffs were "likely to fail in establishing … standing"); *Doe v. Trump*, 157 F.4th 36, 78–79 (1st Cir. 2025) (similar).

It is no surprise that the government can muster no authority for its contention that any order vacating an immigration policy intrudes on Article II. Determining whether an agency has complied with a statute "is a familiar judicial exercise." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012). For that reason, this Court has routinely rejected the contention that the government is irreparably harmed by an order that merely requires it to adhere to its statutory obligations. *See Doe*, 157 F.4th at 78–79 (government "is not irreparably harmed" by order "that bars enforcement of an unlawful" policy); *see also Am. Pub. Health Ass'n v. NIH*, 145 F.4th 39, 55 (1st Cir. 2025) (rejecting argument that order irreparably harmed government by "impair[ing] the President's ability to execute core Executive Branch Policies"); *New York v. Trump*, 133 F.4th 51, 71 (1st Cir. 2025) (similar).

## B.    A stay would harm Plaintiffs and the public.

Plaintiffs and the public would be severely and irreparably harmed if the Court granted a stay. The district court documented the extensive harms inflicted on Plaintiffs, their members, and their clients. Op. 64–84, 116–20. Many of Plaintiffs' members "have lost jobs, lost income, and lost the ability to care for their families." *Id.* at 77. Some "have been separated from their family members for prolonged periods of time." *Id.* at 78. Others "have fallen out of legal status" and "have expressed fear of being arrested and detained … and being removed from the United States." *Id.*

The public interest similarly counsels against a stay. The consequences of the Challenged Policies have been felt in every corner of the country. The breadth of the harms is evidenced by the volume of related litigation. As the district court observed, Stay Op. 25–26, courts around the country have held that the Challenged Policies irreparably harmed immigrants, their families, employers, and communities, *e.g.*, *Doe*, 2026 WL 1170971, at *18–20; *Varniab*, 2026 WL 485490, at *22–23; *Behdin*, 2026 WL 1031079, at *24–26. Granting a stay would perpetuate these harms to Plaintiffs, to immigrant communities, and to the public at large.

## CONCLUSION

A stay pending appeal should be denied.

31

August 3, 2026                          Respectfully submitted,

                                        Ryan Cooper
                                        Anashua Dutta
                                        Catherine M.A. Carroll
                                        Robin F. Thurston
                                        Democracy Forward Foundation
                                        P.O. Box 34553
                                        Washington, DC 20043
                                        202-448-9090
                                        rcooper@democracyforward.org
                                        adutta@democracyforward.org
                                        ccarroll@democracyforward.org
                                        rthurston@democracyforward.org

                                        Amy R. Romero
                                        Kevin Love Hubbard
                                        Lawyers' Committee for Rhode Island
                                        199 North Main Street
                                        Providence, RI 02903
                                        401-453-1500
                                        amy@dwbrlaw.com
                                        kevin@dwbrlaw.com

                                        Melissa Keaney
                                        Abbey Koenning-Rutherford
                                        Reem Subei
                                        Muslim Advocates
                                        1032 15th Street NW No. 362
                                        Washington, DC 20005
                                        202-655-2969
                                        melissa@muslimadvocates.org
                                        abbey@muslimadvocates.org
                                        reem@muslimadvocates.org

                                        Vijay Bondada
                                        South Asian American Justice
                                        Collaborative
                                        333 West San Carlos Street Suite 600
                                        San Jose, CA 95110

32

408-550-9240
vijay.bondada@saajco.org

*Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing contains 6,998 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). The document also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word in proportionally spaced 14 point Times New Roman typeface.

/s/ Ryan Cooper
Ryan Cooper

**CERTIFICATE OF SERVICE**

I certify that on August 3, 2026, the foregoing was filed using the Court's CM/ECF system. All participants are registered CM/ECF users and will be served electronically via the CM/ECF system.

<u>/s/ Ryan Cooper</u>
Ryan Cooper