**No. 26-1703**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

DORCAS INTERNATIONAL INSTITUTE
OF RHODE ISLAND, et al.,

Plaintiffs-Appellees,

v.

MARKWAYNE MULLIN, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Rhode Island
District Court Case No. 1:26-cv-00132-JJM-PAS

**REPLY IN SUPPORT OF EMERGENCY MOTION
FOR A STAY PENDING APPEAL**

<table>
<tr><td>

AUGUST FLENTJE
Deputy Director

MARIE V. ROBINSON
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
</td><td>

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

TYLER J. BECKER
Counsel to the Assistant Attorney
General
U.S. Department of Justice, Civil
Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000
</td></tr>
</table>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 1

    I.     The Government Is Likely to Succeed on the Merits ................................ 1

         A.     The Comprehensive Re-Review Is Neither Reviewable Nor Contrary to Law ................................................................................. 1

         B.     The Country-Specific Factors and Benefits Hold Policies Are Not Reviewable, At Least for Certain Benefits ........................ 4

         C.     The Country-Specific Factors Policy Is Not Contrary to Law ................................................................................................. 7

         D.     The Benefits Hold Is Not Contrary to Law ..................................... 7

         E.     The Policies Are Not Arbitrary or Capricious ................................. 9

    II.    The Equities Favor a Stay ............................................................................ 10

CONCLUSION ................................................................................................. 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

## INTRODUCTION

The Immigration and Nationality Act ("INA") confers substantial discretion to adjudicate immigration benefits and evaluate anti-terrorism, public safety, and national-security concerns.  Yet Plaintiffs contend USCIS could not adopt its Comprehensive Re-Review, Country-Specific Factors, and Benefits Hold Policies to address significant vetting and national-security concerns with granting new immigration benefits and reviewing previously granted benefits to aliens from thirty-nine countries that present particularly vexing vetting issues.

A stay is warranted.  Plaintiffs fail to respond to several of the Government's arguments and where Plaintiffs do respond, they fail to demonstrate that the Challenged Policies are reviewable, contrary to law, or arbitrary and capricious.  The Government and the public are harmed while the district court's vacatur is effective.

## ARGUMENT

## I.    The Government Is Likely to Succeed on the Merits

### A. The Comprehensive Re-Review Is Neither Reviewable Nor Contrary to Law

1. The Comprehensive Re-Review Policy is not reviewable.  Mot.6-8.  Plaintiffs argue the policy is final agency action.  Opp.15-16.  But a directive to USCIS personnel to re-review particular applications is a "preliminary investigative step," not the consummation of USCIS's decision-making process.  Mot.6 (quoting *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024)).  Plaintiffs tellingly never address *Harper*.  They say

the first *Bennett* prong is met because the policy "bind[s] agency personnel." Opp.16. But as Plaintiffs' own case says, "an agency's action is not necessarily final merely because it is binding." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). And *Appalachian Power* involved EPA guidance that effectively imposed new substantive requirements on regulated parties and left no meaningful discretion to depart. *Id.* The Comprehensive Re-Review Policy is different—it does not alter the legal status of any previously granted benefit or new substantive requirements on beneficiaries. It establishes a "tentative or interlocutory" investigative step through which USCIS may determine whether further individualized action is warranted. *Harper*, 118 F.4th at 116.

The second *Bennett* prong is not met either. Any legal consequence would come from USCIS's subsequent decision to reverse the benefit provided. Mot.6-7. Plaintiffs attempt to argue aliens are facing hardships from the risk that they will need to "reestablish their eligibility" or their benefits may be revoked. Opp.16. But the Comprehensive Re-Review Policy does not bind USCIS staff to revoke, suspend, or alter any particular benefits. *Contra Biden v. Texas*, 597 U.S. 795, 808-09 (2022). It instead directs USCIS personnel to conduct comprehensive re-review of approved benefit requests to determine whether any benefit should be reconsidered.

The policy is also not ripe. Mot.7-8. Plaintiffs contend that because they raise a purely legal question about the policy's legality, their challenge satisfies the fitness prong. Opp.18. But "[t]he notion that disputes which turn on purely legal questions

2

are always ripe for judicial review is a myth." *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 537 (1st Cir. 1995). Plaintiffs' challenge "rests upon contingent future events"—withdrawal of benefits—"that may not occur as anticipated, or may not occur at all." Mot.7 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Plaintiffs do not establish that revocation of any benefit "is inevitable (or nearly so)." *Riva v. Massachusetts*, 61 F.3d 1003, 1010 (1st Cir. 1995).[1]

2. The Comprehensive Re-Review Policy is not contrary to law. Plaintiffs do not dispute agencies have authority to reconsider prior decisions but invoke the exception that reconsideration does not apply "where Congress has specified a particular process." Opp.22. Plaintiffs contend that "process" Congress identified is "reconsideration must be based on an individualized assessment in individual cases." Opp.22 (citing 8 U.S.C. §§1451(a), 1256). Yet nothing in the policy indicates USCIS will not undertake an individualized assessment before revoking benefits, or USCIS is not going to follow the process Congress provided before, *e.g.*, denaturalizing an individual. Mot.9; *contra* Opp.22-23. Rather, the policy directs USCIS personnel to re-review approved benefit requests for aliens from specific countries during a period. That is not contrary to law.

---

[1] Plaintiffs note the Government failed to raise ripeness in its district court stay motion, but "ordinary waiver principles do not apply" to Article III limitations. *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 35 (1st Cir. 2020). Regardless, finality and ripeness substantially overlap. *See W.R. Grace & Co.-Conn. v. EPA*, 959 F.2d 360, 364 (1st Cir. 1992).

3

### B. The Country-Specific Factors and Benefits Hold Policies Are Not Reviewable, At Least for Certain Benefits

The INA strips federal-court jurisdiction to review "any judgment regarding" certain INA provisions and "any other decision or action" committed to the discretion of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(i), (ii). Whether applicants may receive work authorization and adjustment of status is a determination that Congress generally made discretionary. *See, e.g.*, 8 U.S.C. §§1184(p)(6), 1324a(a), (h)(3) (work authorization); §§1255, 1256(a) (adjustment of status). Review of the Country-Specific Factors and Benefits Hold Policies for these benefits is barred by §1252(a)(2)(B) because these policies are inextricably intertwined with USCIS's exercise of statutorily conferred discretion over the grant or denial of benefits. Mot.9-13, 17-18. Similarly, the policies are unreviewable under the APA given the broad discretion the statutes provide, including for asylum. Mot.10, 13, 17 (citing 5 U.S.C. § 701(a)(2)). And the Country-Specific Factors Policy is not final agency action.

1. Plaintiffs argue §1252(a)(2)(B)(i) bars jurisdiction only over claims challenging the ultimate adjudication of adjustment of status and does not apply to other aspects of the adjudication. Opp.7. That is incorrect.

Section 1252(a)(2)(B)(i) bars judicial review of "any judgment regarding the granting of relief," including adjustment of status. Plaintiffs rely on the absence of language expressly referencing "policies and procedures" to argue §1252(a)(2)(B)(i)

4

reaches only final adjudication. But the statute uses the expansive phrase "*any* judgment regarding the granting of relief," §1252(a)(2)(B)(i) (emphasis added), demonstrating Congress's intent to preclude review of all judgments bearing on the adjudication of such discretionary relief, not merely the ultimate decision. As *Patel v. Garland* explained, "any judgment" encompasses judgments made throughout the adjudication of applications for discretionary relief. 596 U.S. 328, 337-39 (2022). The Country-Specific Factors and Benefits Hold Policies likewise involve judgments USCIS makes in adjudicating applications, including consideration of country-specific facts and circumstances and holding issuance of decisions while USCIS improves its vetting systems.

Plaintiffs (Opp.8) rely on *McNary v. Haitian Refugee Center, Inc.*, but *McNary* interprets a materially different jurisdictional provision that precluded review of only "a determination respecting an application." 498 U.S. 479, 492 (1991). Section 1252(a)(2)(B)(i) in contrast bars review of "any judgment regarding the granting of relief," which *Patel* extends beyond the ultimate discretionary decision. 596 U.S. at 337-39.

Plaintiffs misread *Doe*. Opp.10. *Doe* does not hold that jurisdictional bars addressing individual determinations cannot reach policies governing determinations; it reaffirms that jurisdictional bars' scope depends on the statutory text and distinguishes *McNary* because the statute there referred to a single "determination." *Mullin v. Doe*, 146 S. Ct. 2121, 2134 (2026). By contrast, §1252(a)(2)(B)(i) bars review of "any

judgment regarding the granting of relief." Section 1252(a)(2)(B)(i) is like the review bar in *Doe* that prohibits "review of any determination … with respect to" temporary protected status, 8 U.S.C. §1254a(b)(5)(A), which the Supreme Court held prohibited review of subsidiary determinations that were part of the unreviewable final decision. *Doe*, 146 S. Ct. at 2133-34.

2.  Plaintiffs assert §1252(a)(2)(B)(ii) does not bar review. Opp.11. That section bars review of "any other decision or action" where authority is specified under the INA to be in the discretion of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). The phrase "any other" demonstrates Congress's intent to broadly encompass discretionary decisions and actions, rather than limit the scope of the statute to one decision. *See Kucana v. Holder*, 558 U.S. 233, 246-47 (2010).

Plaintiffs' distinction of the visa-retrogression cases is incorrect. Section 1252(a)(2)(B)(ii)'s applicability does not turn on how a claim is labeled but on whether the challenged action arises from authority the INA commits to agency discretion. The visa-retrogression cases recognize that adjustment of status involves discretionary judgments, including discretion over how those judgments are exercised. *See Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025). Plaintiff cannot avoid the jurisdictional bar by characterizing the Challenged Polices as separate from individual decisions when these policies are embedded in discretionary adjudications.

3.  The Country-Specific Factors Policy is not final agency action. *Contra* Opp.14-15. The policy is not the consummation of USCIS's decision-making process

6

in any case, given that it does not reflect the "agency's settled position" it "plans to follow." *Contra Appalachian Power*, 208 F.3d at 1022. It merely tells USCIS staff to consider certain factors when exercising discretion. Mot.13.

## C. The Country-Specific Factors Policy Is Not Contrary to Law

Plaintiffs do not defend the district court's reliance on 8 U.S.C. §1152(a)(1)(A), which bars "discriminat[ion] … in the issuance of an immigrant visa because of the person's … nationality." Nor do they engage with the government's argument that §1152(a)(1)(A) does not apply to the immigration-benefits adjudications here, and if it did, the administrative record makes clear USCIS will not consider an applicant's nationality itself to be a significant negative factor. Mot.16. Plaintiffs do not respond to the Government's argument that Plaintiffs waived reliance on §1152(a)(1)(A) by failing to raise it in their summary-judgment briefing, and that the district court's reliance on this provision violated the "party-presentation principle." Opp.21. The district court relied entirely on §1152(a)(1)(A) to conclude that the Country-Specific Factors Policy was contrary to law, Op.107-112; that conclusion is likely to be reversed.

## D. The Benefits Hold Is Not Contrary to Law

The Benefits Hold Policy is not contrary to law. The INA does not require adjudication of benefits applications on a specified timeline (at least one reviewable by courts). Mot.19-20. USCIS did not need clear statutory authorization to apply the holds here, where USCIS is exercising its discretionary authority to adjudicate immigration benefits, and the INA requires USCIS to obtain relevant security and

7

verification information.  Mot. 20-21.  Under the district court's reasoning, and uncontested by Plaintiffs, even a few days' pause for Saudi nationals after 9/11 would be unlawful.  Mot.2.

Plaintiffs point to "mandatory language" that applies to naturalization and asylum applications.  Opp.19-20.  But that language requires USCIS to make a determination; it does not provide that determinations must occur on a specified timeline.  8 U.S.C. §§1158(d)(5)(A)(i), 1446(d).

Plaintiffs contend the INA specifies the time during which USCIS must complete adjudications.  Section 1158(d)(5)(A)(iii) provides a time under which applications for asylum should be completed "in the absence of exceptional circumstances."  Yet Plaintiffs do not contend with the fact that the need to conduct further investigation into applications from certain countries is an "exceptional circumstance[]."  And Congress has explicitly precluded any private rights stemming from this timing provision.  Mot.19 (citing 8 U.S.C. §1158(d)(7)).  Section 1447(b) provides the ability for citizenship applicants to petition district courts if a decision remains pending 120 days after the examination is conducted, but that is not a limit on USCIS's authority to pause examinations. Section 1571(b) provides "the processing of an immigration benefit application should"—but *not must*—"be completed not later than 180 days" after the application is filed.  None of the provisions Plaintiffs cite prohibit the pause.

### E. The Policies Are Not Arbitrary and Capricious

USCIS identified the relevant concerns that prompted the policies, addressed deficiencies in the quality and integrity of information that could be obtained to vet aliens from certain countries, and explained why additional scrutiny was necessary. Mot.22. Plaintiffs complain USCIS "vague[ly] invo[ked]" those concerns. Opp.24. Yet that is belied by the administrative record and regardless establishes a disagreement about the depth of explanation, not the lack of explanation.

Citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016), Plaintiffs argue USCIS provided only a "conclusory" statement that it considered reliance interests. Opp.24. That is belied by the statement itself: USCIS identified the consequence of implementing its new vetting and re-review policies—delays in adjudication—and explained why it considered the competing interest in national security to outweigh it. ECF 16-2, at 7-10. At most, the district court disagreed with the depth of USCIS's consideration; that is not the failure-to-consider reliance interests.

Plaintiffs' pretext argument fares no better. Plaintiffs appear to assume the APA would supply a different—and higher—standard of review for animus claims than *Trump v. Hawaii*, 585 U.S. 667 (2018). Opp.24-25. But they fail to respond to the Government's argument that courts "must affirm" if the "agency's decision is supported by a rational basis," and *Hawaii* demonstrates how rational-basis scrutiny operates on similar facts. Mot.24-25 (quoting *River St. Donuts LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009)). Nowhere do Plaintiffs assert the Government lacked a

9

rational basis. At most, Plaintiffs identify other potential motivating factors for the policies but fail to demonstrate that the agency's proffered explanations were "contrived." *See Dep't of Commerce v. New York*, 588 U.S. 752, 784 (2019). Never mind that "judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided," *id.* at 781 (citation omitted); yet the district court considered social-media posts outside the record to displace the substantial reasoning and support for the policies in the record. Op.121-125.

## II. The Equities Favor a Stay

The Government and the public are suffering irreparable harm every day the vacatur remains effective. The Challenged Policies arose from significant concerns that immigration benefits may be provided or may have been granted to aliens from the designated countries before USCIS has been able to adequately address national-security, public-safety, and terrorism concerns through proper vetting. Mot.26. Requiring USCIS to proceed with adjudications under circumstances the agency has determined are inadequate, and vacating other policies aimed at remedying those defects, constitutes irreparable harm to the Government and the public. Mot.27.

Plaintiffs contend the Government "demonstrated no urgency in pursuing a stay." Opp.25; *see* Opp. 3-4. That is farcical. This Court requires the Government to wait for a district court ruling prior to seeking a stay in this Court, *see* Order, *AFGE*

10

*Local 2305 v. U.S. Dep't of Veterans Affs.*, No. 26-1321 (1st Cir. Apr. 6, 2026), and the district court waited nearly a month to decide the Government's stay motion. ECF 51.

Plaintiffs assert many of the Travel Ban countries were included because of high visa-overstay rates or unwillingness to accept back their nationals, not screening, vetting, or information-sharing deficiencies. Opp.26. That is incorrect. The December Proclamation identifies visa-overstay rates as *one* factor in a set of many factors including "screening and vetting capabilities," "information-sharing policies," and "terrorist presence" within the country, and the President considered the "totality of the circumstances with respect to each country." 90 Fed. Reg. at 59721-22.

Plaintiffs point out a declaration submitted in support of the Government's stay motion identifies three countries with vetting problems that are not subject to the Challenged Policies. Opp.26-27. But the declaration merely provides examples of countries with document deficiencies, ECF 46-1 ¶7, and USCIS has not determined the Challenged Policies need to apply to those three countries. Moreover, Plaintiffs ignore the serious problems the declaration identifies regarding document deficiencies from covered countries catalogued in the declaration. *Id.* ¶¶6-7.

Plaintiffs complain the Travel Ban proclamations focus on restricting the entry of aliens, not people who have already been admitted, and that somehow impacts the Government's irreparable harm. Opp.27. But the problems USCIS identified are even more relevant to harms for individuals who may already be in the country despite serious vetting deficiencies.

11

Plaintiffs (Opp. 28) claim USCIS has "several [other] tools" to address security concerns with immigration-benefit applications, but none is a substitute for the Challenged Policies' preventative-screening function.

## CONCLUSION

This Court should grant a stay pending appeal.

Respectfully submitted,

AUGUST FLENTJE
Deputy Director

MARIE V. ROBINSON
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

BRETT A. SHUMATE
  Acting Assistant Attorney General

DREW C. ENSIGN
  Deputy Assistant Attorney General

*s/ Tyler J. Becker*

TYLER J. BECKER
  Counsel to the Assistant Attorney
  General
U.S. Department of Justice, Civil
Division
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 514-2000

Attorneys for Defendants-Appellants

August 2026

## CERTIFICATE OF COMPLIANCE

This brief has been filed with a motion for leave to exceed the word limits of Federal Rule of Appellate Procedure 27(d)(2)(A). The brief contains 2,600 words. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Tyler J. Becker*
TYLER J. BECKER

# CERTIFICATE OF SERVICE

I hereby certify that August 10, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

*s/ Tyler J. Becker*
TYLER J. BECKER