No. 26-1703

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

DORCAS INTERNATIONAL INSTITUTE OF RHODE ISLAND; REFUGEE DREAM CENTER; SERVICE EMPLOYEES INTERNATIONAL UNION; INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; AFRICAN COMMUNITIES TOGETHER; VENEZUELAN ASSOCIATION OF MASSACHUSETTS; PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS; AMERICAN GATEWAYS,

Plaintiffs - Appellees,

v.

UNITED STATED CITIZENSHIP AND IMMIGRATION SERVICES; JOSEPH EDLOW, in the official capacity as Director of the United States Citizenship and Immigration Services; DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in the official capacity as Secretary of the Department of Homeland Security,

Defendants - Appellants.

On Appeal from the United States District Court
for the District of Rhode Island, No. 1:26-cv-00132

BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS – APPELLANTS AND REVERSAL

Matt A. Crapo
Christopher J. Hajec
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
mcrapo@fairus.org
(202) 328-7004

Counsel for Amicus Curiae
Federation for American Immigration Reform

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

Dated: October 1, 2026 Respectfully submitted,

s/ Matt Crapo

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........................................................................ ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* .............................................1

SUMMARY OF ARGUMENT .........................................................................1

ARGUMENT ...................................................................................................2

I. The President's inherent authority to exclude aliens .....................................2

II. The Challenged Policies are an exercise of presidential authority and unreviewable under the APA .........................................................................5

CONCLUSION ..................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
333 U.S. 103 (1948) .......... 3

*Dalton v. Specter,*
511 U.S. 462 (1994) .......... 8, 9

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
189 F. Supp. 3d 85 (D.D.C. 2016) .......... 8

*Franklin v. Massachusetts*,
505 U.S. 788, 796 (1992) .......... 7

*Nishimura Ekiu v. United States*,
142 U.S. 651, 659 (1892) .......... 2

*Tulare Cty. v. Bush*,
185 F. Supp. 2d 18 (D.D.C. 2001) .......... 8

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537, 542-43 (1950) .......... 3

### STATUTES

8 U.S.C. § 1182(f) .......... 3

### MISCELLANEOUS

Executive Order No. 14161,
*Protecting the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 8451 (Jan. 30, 2025) .......... 4

Proclamation 10949,
*Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*,
90 Fed. Reg. 24497 (June 10, 2025) .......... 4, 5

Proclamation 10998,
*Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States*, 90 Fed. Reg. 59717 (Dec. 19, 2025) ....................................5

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Federation for American Immigration Reform ("FAIR") is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interest. FAIR has been involved in hundreds of legal cases since 1980, either as a party or *amicus curiae*, with the aim of advancing this mission.[1]

## SUMMARY OF ARGUMENT

The Defendant agencies adopted the Challenged Policies to address national security and terrorism vetting concerns at the direction of the President. The President issued an Executive Order in which he directed administration officials to enhance the vetting and screening of all aliens—including both aliens seeking entry and those who had already entered the United States—particularly those coming from specific regions with identified security concerns. In two subsequent Proclamations, the President suspended or restricted the entry of aliens from certain countries where vetting and screening information is deficient.

---

[1] All parties have consented to the filing of this *amicus* brief. No counsel for any party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

The Challenged Policies, which implement these presidential directives, consist of: the Country-Specific Factors Policy, which requires consideration of vetting issues in the adjudication of applications for aliens from the highest risk countries; the Benefits Hold Policy, which paused the final adjudication of immigration benefit applications from those same countries; and the Comprehensive Re-Review Policy, which requires United States Citizenship and Immigration Services ("USCIS") to review benefits provided since January 2021 to aliens from the thirty-nine countries from which entry has been restricted. (The rescission of another policy, the Global Asylum Hold Policy, renders the challenge to that policy moot.)

The Challenged Policies were made pursuant to both inherent and delegated presidential authority. As such, they are not reviewable under the Administrative Procedure Act ("APA"), and the district court lacked jurisdiction to subject the policies to such review. This Court should therefore reverse.

## ARGUMENT

### I. The President's inherent authority to exclude aliens.

It is indisputable that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892) ("It is an accepted maxim of international law that every sovereign nation has the power, as inherent

in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe."). It is also well-established that the President has independent authority in the areas of foreign policy and national security. *See e.g., Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent *executive* power.") (emphasis added).

Congress recognized broad presidential authority over the entry of aliens in 8 U.S.C. § 1182(f), which authorizes the President, when in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate." Further, granted the President's inherent constitutional power, as Commander-in Chief, to exclude aliens, it cannot be a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

Here, the Challenged Policies implement the same national-security judgment reflected in the President's exercise of that authority: deficiencies in available screening and vetting information warranted additional scrutiny before entry or immigration benefits are approved. Specifically, on January 20, 2025, President Trump directed executive agencies to "vet and screen to the maximum degree possible all aliens who intend to be admitted, enter, or are already inside the United States, particularly those aliens coming from regions or nations with identified security risks." Exec. Order No. 14161, *Protecting the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 8451 (Jan. 30, 2025). To ensure agency action was grounded in relevant factual considerations, President Trump also directed the Attorney General, Secretary of Homeland Security, and Director of National Intelligence to submit a report to the President within sixty days "identify[ing] countries throughout the world for which vetting and screening information is so deficient as to warrant a partial or full suspension on the admission of nationals from those countries pursuant to section 212(f) of the INA (8 U.S.C. 1182(f))." *Id.* at 8452; *see also id.* at 8452-53 (requesting the number of nationals who have entered from those countries since 2021) (Exec. Order, § 2(b)).

After receiving the inter-agency review, President Trump issued Proclamation 10949, *Restricting the Entry of Foreign Nationals To Protect the*

*United States From Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24497 (June 10, 2025). In Proclamation 10949, President Trump identified difficulties in vetting nationals from certain countries. For instance, certain countries lack a competent or cooperative central authority for issuing passports or civil documents, or do not have effective screening and vetting measures in place. *Id.* at 24499-502. The President therefore suspended or restricted entry of nationals from nineteen countries that had been identified as deficient with regard to screening and vetting. *Id.* at 24499 (Proclamation 10949, § 1(f) and (g)). On December 16, 2025, the President issued Proclamation 10998, in which he identified additional countries that cannot meet basic criteria for identifying their nationals and residents who pose national security and public safety threats and for sharing information with the United States. Proclamation 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States*, 90 Fed. Reg. 59717, 59718 (Dec. 19, 2025). Accordingly, the President continued the suspensions and restrictions on entry set forth in Proclamation 10949 and imposed suspensions and restrictions on entry with respect to additional countries. *Id.* at 59722-26.

## II. The Challenged Policies are an exercise of presidential authority and unreviewable under the APA.

The three Challenged Policies at issue in this litigation were issued pursuant to the above-listed presidential directives:

*a) Country-Specific Factors*

In compliance with Proclamation 10949, USCIS issued a policy alert stating that it would "consider[ ] any relevant country-specific factors such as those identified in PP 10949 as significant negative factors in the adjudication of discretionary benefit requests;" and that such factors "are not limited to insufficient vetting and screening information that limits USCIS' ability to assess the risks posed by aliens from the countries identified in PP 10949." Defendant-Appellants' Appendix ("Gov't App.") at 214. *See id.* at 209-11, 214 (citing Proclamation 10949 as a source of authority for the establishment of the Country-Specific Factors policy).

*b) Benefits Hold Policy*

The Benefits Hold Policy limits final adjudication on all benefit applications. Gov't App. at 221-28. Other than placing a hold on final approval or denial of an application, underlying screening activities are allowed to proceed, thereby affording USCIS the opportunity to ensure necessary information related to benefits is received and vetted without unduly delaying adjudication. Gov't App. at 226 n.2. *See id.* at 221-23, 226-28 (citing E.O. 14161 and Proclamation 10949 as sources of authority for the Benefits Hold Policy).

*c) Comprehensive Re-Review Policy*

The Comprehensive Re-Review Policy was created to ensure that all aliens who entered the United States since January 2021 from nations identified as high risk for national security concerns in Proclamations 10949 and 10998 have been adequately vetted for relevant national security risks. Gov't App. at 267-71. USCIS relied upon these Proclamations when it decided to conduct "a comprehensive re-review, potential interview, and re-interview of all aliens from high-risk countries of concern who entered the United States on or after January 20, 2021[.]" *Id.* at 269. *See id.* at 267-69 (citing E.O. 14161 and Proclamations 10949 and 10998 as sources of authority for the Comprehensive Re-review policy).

Thus, the Challenged Policies were issued pursuant to the President's inherent, congressionally-implemented authority to exclude aliens in the interests of the United States, and are *ipso facto* unreviewable. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to APA review. *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). And actions taken by subordinate officials to carry out the President's directives given under his inherent foreign-policy or statutorily-delegated authority, such as the Challenged Policies, are themselves presidential actions.

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA

reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is presidential or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decision making to the discretion of the President, judicial review of the President's decision is not available."). As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.,* the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, Presidential Administration, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 104 (D.D.C. 2016). *See also, e.g., Tulare Cty. v. Bush*, 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review

pursuant to the APA.") (citing *Dalton*, 511 U.S. at 470) (other internal citations omitted).

Here, as shown above, the agency acted at the direction of the President and implemented his executive order and subsequent Proclamations when it implemented each of the Challenged Policies. Accordingly, the agency exercised presidential authority in establishing the Challenged Policies, and the district court lacked jurisdiction to review them under the APA.

## CONCLUSION

For the foregoing reasons, the district court's order vacating the Challenged Policies should be reversed.

Dated: October 1, 2026

Respectfully submitted,

/s/ Matt Crapo

Matt A. Crapo
Christopher J. Hajec
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
mcrapo@fairus.org
(202) 328-7004

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

## CERTIFICATE OF COMPLIANCE

1. The foregoing brief complies with the type-volume limitation of FED. FED. R. APP. P. 29(a)(5) because:

This brief contains 1,931 words, including footnotes, but excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

DATED: October 1, 2026

Respectfully submitted,

s/ Matt Crapo

## CERTIFICATE OF SERVICE

I certify that on October 1, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

s/ Matt Crapo